# William Barnet and John Barnet adm'rs of Henry Barnet appellants *against* Jacob Yohe appellee.

When a judgment had been obtained by a father in law, against his son in law, on a bond, and all the visible estate of the latter has been sold by the sheriff, leaving a considerable balance due, and the former has died intestate, and his lands have been valued in the Orphan's Court, the court will direct, that the distributive share of the latter, in right of his wife, of the valuation, be credited on the judgment obtained against him.

APPEAL from a decree of the Orphan's Court of Northampton county, on the petition of the appellants, filed on the 20th March 1804.

The petition stated, that Jacob Yohe the appellee, intermarried with Susannah, one of the daughters of the intestate, and was indebted to the intestate in his life time by bond dated 20th August 1790, conditioned for the payment of $1084 and 50 cents, with interest.

That judgment was rendered against the said Jacob as of August term 1790, in Northampton county, on the said bond, and divers executions issued thereon both in the life of the intestate *75]    *and since, by virtue whereof his real and personal estate had been sold for satisfaction of the said judgment, amounting, exclusive of costs, to the net sum of $132 and 73 cents ; and that the residue of the said bond remains due.

That a writ has issued out of the Orphan's Court for the par-

tition or valuation of the real estate of the said Henry Barnet, and by an inquisition, the real estate has been divided into four parts, and three of the said parts were awarded to the petitioners, William Barnet and John Barnet, and to John Yohe and Susannah Dawes, children of Mary Yohe, a deceased daughter of the said intestate, by her husband Adam Yohe, also deceased, one fourth part to each respectively.

That the said William Barnet, John Barnet, John Yohe, and Susannah Dawes, are bound to secure the other legal representatives of the said Henry Barnet, by bond and recognizance, their several and respective shares of the valuations, according to the rates of their respective rights; and that the said Jacob Yohe is entitled, in right of his wife Susannah, to one equal fifth part of the several valuations.

That the petitioners do not know or believe, that the said Jacob Yohe is seised or possessed of any other property, real or personal, to satisfy the residue of the aforesaid judgment, other than his interest in the said valuation, in right of his said wife.

And the petitioners prayed, that the several sums of money which accrued in virtue of the said inquisition and valuations to the said Jacob Yohe, in right of his said wife, as his purpart and share of the respective valuations, may be made due and payable to the petitioners, in satisfaction of the residue of the aforesaid judgment; and that the bonds and other securities to be given by the said William Barnet, John Barnet, Jacob Yohe, and Susannah Dawes respectively, for the one fifth part of the valuation accruing to the said Jacob Yohe, may be made payable to the petitioners, or that the sums may be otherwise secured to the petitioners, in such manner as the court might direct, for the benefit of the estate of the said intestate, for and towards satisfaction of the residue due and unpaid on the said judgment.

The petitioners made affidavit of the truth of the facts contained in their petition; and also made proof of the service of notice on the said Jacob Yohe, that the Orphan's Court would be moved for the purposes contained in the petition.

The Orphan's Court on argument, adjudged that the prayer of the petitioners could not be granted, from which adjudication the petitioners appealed, and gave security to prosecute the appeal with effect.

Mr. John Ewing for the appellee.   Two exceptions were taken *in the Orphan's Court to the prayer of the appellants.   [*76 1. That the court had no jurisdiction respecting the subject matter.   2. Even admitting such jurisdiction, it ought not to execute it.

In vain we search the act of assembly, for words authorizing the Orphan's Court to exercise jurisdiction in matters of this nature.   If we examine the act " establishing Orphans' Courts," passed in 1713, (1 Dall. St. Laws, 98) or the act directing the descent of intestates' real estates, and distribution of their per

sonal estates, passed on the 19th April 1794, (3 St. Laws 521) or the supplement thereto, (4 St. Laws 155) we find no such powers conferred on them. The appellee is neither a guardian, trustee, tutor, executor, or administrator, or otherwise accountable for any real or personal estate of orphans; nor had the Orphan's Court any authority to award process, to cause him to come before them. Their jurisdiction is limited, and their powers are defined.

But allowing them jurisdiction, it ought not to be exercised in the present instance—Because,

1. This is in fact the case of administrators praying a set off. The defalcation act of 1705 (1 St. Laws 65) is confined to persons sued in a court of common law. There can be no set off but of mutual debts in the same right. The parties in the common Pleas and in the Orphan's Court are different. In the former they are administrators; but in the latter, they petition as heirs of the intestate to be allowed a short cut to the payment of their proportion of the appellee's debt. But under the act of 19th April 1794, § 22, whoever takes the lands of the intestate at a valuation, must pay the other children their respective purparts.

2. The petitioners had a remedy at law complete and adequate before the valuation, as to the life estate of the appellee in his wife's share of the lands. Their remedy against his person has been taken away, by his discharge, under the insolvent laws, subsequent to the judgment. This case must be determined on general principles. If the bond to the intestate had been disputed, no mode of investigation of the controversy would be open to the Orphan's Court; whereas the Common Pleas might try the fact by a jury, and afterwards issue execution.

3. The remedy here had been discharged by the act of the parties who are petitioners, and who applied for the valuation; and equity would not relieve in such a case. If a party has lost his right by a legal bar, he can have no remedy in chancery. 2 Atky. 240. In cases proper for law, a man must defend himself by legal pleading; and an injunction was devised in a hard case where an executor pleaded an improper plea. 1 Vern. 119. *So, where an administrator, a defendant at law, pleaded *77] a false plea, by mistake of his attorney. 2 Vern. 325.

4. The appellants have no equity superior to the other creditors to be paid their demand, preferably to such creditors. There can be no difference as to who makes the application to the Orphans' Court, whether he is the administrator of the intestate, or a general creditor of the appellee. The same equity will extend to all the creditors, in proportion to their debts.

If notwithstanding what has been urged, it shall be thought, that the Orphans' Court had jurisdiction in the premises, it is submitted to the court, whether that jurisdiction ought not to be exercised in such a way, as to secure the payment of the principal of the wife's distributive share of the valuation, to her or

[Barnet's Administrators *v.* Yhoe.]

her issue, after the death of the appellee; conformably to the equity decisions, that a settlement shall be made on the wife, before chancery will lend its aid to enforce the payment of a portion or legacy to the feme?

Mr. Sitgreaves for the appellants. While the adverse counsel has denied to the Orphans' Court the very means of doing common justice to the children of a family, he has in the close of his address, affected to confer a jurisdiction on them, which has never been exercised by any court in Pennsylvania. That courts of equity in England, (1 Fonbla. 88,) will not lend their aid to the husband, to render his legal right available for the recovery of her fortune, unless he has made a proper settlement on the wife, or she consent in court to his receiving it, is readily admitted. Nay, that they have even granted an injunction to prevent the husband proceeding in the Spiritual Court, for the wife's portion arising out of personal estate, (Ib.) is also conceded. But it is sufficient to observe on this head, that our manners, as well as the powers of the two courts, materially differ; such adjudications would not improve the state of society amongst us, and in fact, have never been adopted in this state. By act of law, the real estate of the wife is converted into personalty, and the appellee is vested with the legal right to receive it.

The court will consider the case on its true merits. The bond is not disputed; *transivit in rem judicatam.* The executions and sales, are matters of record. So are the inquisition and valuation. Every fact is truly stated in the petition. If the appellee has any other property, which may be levied upon, it is competent to him to shew it, and our object is answered. There are no creditors before the court, except the administrators of the intestate; none such resist their claim. It is insisted, that the facts disclosed, operate as a legal bar to the appellee's receiving his wife's distributive share of the valuation of the land; *and not that the provisions of the defalcation act apply. It is analogous to the plea of payment to [*78 a bond, with leave to give the special matters in evidence. What ought not to be paid, shall be considered as paid. He who asks equity, must do equity himself. So in courts of law, one judgment may be set off against another, though obtained in different courts. And it cannot be denied, that if this valuation had arose by writ of partition, in the Common Pleas, they would have interfered as to the distributive share, vested in the appellee. If a plaintiff cannot find sufficient effects of the defendant to satisfy his judgment, the court will order the sheriff to retain, for the use of the plaintiff, money which he has levied, in another action, at the suit of the defendant. Dougl. 219, (231.) The case of Edgell *v.* Haywood and Dawe, in 3 Atky. 352, bears considerably on the question before the court. The marginal note is as follows: D. being indebted to C. by bond, in 200l., the

plaintiff, administratrix of C., brought an action against D. who pleaded the act for the relief of insolvent debtors, and that he was duly discharged ; the plaintiff took judgment for the 200l. and 5l. damages. M. by his will gave D. 1000l., to be paid to him by his executor in a month after the testator's death ; the plaintiff sued out a *fieri facias* on the judgment, and lodged it with the sheriff, and took a warrant to levy the debt out of the legacy, and brings her bill against the executor of M. to admit assets to so much of the legacy, as the plaintiff's debt amounts to, &c. Lord Chancellor HARDWICKE held, that the plaintiff had pursued a proper remedy, and what shall be found due for principal, interest and costs, at law and in equity, ought to be satisfied out of what is due to D. on account of his legacy. The appellee here is indebted to the estate of the intestate a considerable sum, and yet demands a distributive share equal to the other children. To suppose that the Orphans' Court would exceed their jurisdiction in a case where manifest injustice would be done without their interposition, would be gross indeed ! The decree was made in the Orphan's Court in the absence of the president.

BY THE COURT. All the parties interested in the question, are before us. There can be no dispute concerning facts, for they are matters of record.

The petition of the appellants is replete with equity. As to the appellee, the denial of the prayer of the petition must be repugnant to the feelings of every honest mind, and a supposed defect of power in the Orphans' Court, could only have occasioned their adjudication.

The point of jurisdiction then seems the only question, which calls for our decision. Under the old law of 1705, § 2, (1 Dall \*St. Laws, Append. 44,) the words of which, in this particular, are pursued by the law of 19th April 1794, § 1, (3 St. Laws, 522,) "the Orphans' Courts are to make just and "equal distribution of what remaineth clear, after all debts and "funeral and just expences of every sort, first allowed and de- "ducted, amongst the wife and children of the intestate," &c.

To assert that a son or son-in-law, should take a full share with the other children, while the former owe a just debt to their father or father-in-law, and not deducting the same out of their purparts, would fundamentally violate the rules of equity, honesty, and good conscience. Of such debts, the other children are entitled to a full and equal proportion. Otherwise, the consequence necessarily must be, that the estate is not justly and equally divided. Such debts due to the decedent, form a part of his estate, and swell the common stock.

The policy of the law has changed the realty into personalty, and the appellee by the valuation, is become entitled to receive his wife's distributive share absolutely as his own, if there existed no peculiar circumstances to bar him. But equality in the present instance is peculiar equity, and he is bound to do justice

to the other branches of the family, while he demands his share of the estate.

The decree therefore of the Orphans' Court, must be reversed, and the prayer of the petitioners be granted, by deducting the distributive share of Jacob Yohe and Susannah his wife, from the sum due by him on the judgment, and that the giving credit therefor, shall be deemed a full payment to him in right of his said wife ; and that the judgment of this court be remitted to the Orphans' Court, to be carried into execution.

This decision was confirmed on an appeal to the Supreme Court, in March term 1808.   1 Binn. 358.