The opinion of the court was delivered by
Duncan, J.
It is unnecessary to decide, to what extent, and under what circumstances, the occupation of a stream gives to the first occupant a property in the current, so as to prevent the owner of lands above him from detaining, diverting, or exhausting the water.by any erection, not leaving sufficient for all the beneficial purposes to which it had been previously applied below, considered of itself, and without regard to length of' time, because in this case, there has been an enjoyment by the plaintiff, and those under whom they claim of this mill in a particular way ,s and to an ascertained extent, for "a time beyond which the-memory of man runneth not to the contrary. And if a right could be acquired by prescription, this mill, from its antiquity, ought to have all the privileges of an ancient mill. Its existence and uninterupted use may be traced as far back as the first settlement of the country, from the time most probably when the first Blunston’s licence was granted, and when it was a frontier settlement.
The man who first erects a mill in a new country, is considered as a public benefactor, and no subject ought to be treated with more tenderness, no possession more respected, commenced as it was with the assent of all the proprietors of the adjoining tracts, and enjoyed as it has been, without any interruption, and with the approbation of all for near a century. And if it were necessary to presume a grant of all the water right necessary for its use, I would, without hesitation, instruct a jury to presume it. - For the continued acknowledgment, nay the continued silence of the enemies of the right, of all whose interests were affected by it, afford of themselves, the strongest evidence of its legal foundation, though nothing were found in any deed respecting it. And I begin to think that the country has been long enough settled to allow of the time necessary to prove a prescription, see 6 Mass. 90, and even *69 prescription presupposes a grant to have existed. But there is sufficient time, by analogy to the statute of limitations, to protect the plaintiffs in their full enjoyment of the' whole stream, and to sustain this action for the disturbance of the right. It is well settled, that if there has been an uninterrupted, éxclusive enjoyment, above 21 years, of water in any particular way, this affords a conclusive prescription of right in the party so enjoying it, and this is equal to a right by prescription. The situation of the tract of land on which the mill stands, and of the lands on this brook from Blunston’s line down, including the land on which the tan-yard of Todd is, and on which the erection complained of stands, is fully ex-plaihed by a diagram to which I refer as explanatory of the relative situation of the lands adjoining, and of the stream. This ancient mill was erected by Samuel Blunston and James Wright, Samuel Blunston being the owner of the upper tract, through which the mill stream passes, and the family of Wright then owning all the land down to, and including the mill tract. In 1745, S. Blunston, by his will, devised to James Wright in the following words: “I devise to James Wright the one half of the corn and grist mill, with all its appurtenances, and the free liberty of the water to the same, without interruption for ever,” &c. This proves, that the mill being built on a weak stream, required the whole current through Blunston’s tract, and down to this site. Without any interruption, from 1745 to 1788, the mill was so enjoyed, when Samuel Wright became the owner of the mill, and the mill tract, and held the tract on which Todd’s tan-yard is. So owning then, he sells and conveys to John Wright the mill tract, with the appurtenances, under whom the plaintiffs deduce title, and in 1796, sells and conveys to Samuel I. Atlee, the small lot of land owned by the defendant, who showed title under Jtlee, without any special contract between S. Wright and Jtlee, or any restriction on Atlee. Neither Jtlee nor his assigns could divert, detain, impede, or exhaust the waters of this stream in its flow to the mill of John Wright. John acquired all the right as Samuel had it, the exclusive right to all the water used and necessary for this mill. For it is an undeniable principle, that when a man holds a house on part of his ground, and sells it, and afterwards sells the adjoining vacant ground, that the vendee cannot build so as to stop any lights in the first house. 11 Mod. 8. 1 Lev. 21. So in 12 Mass. Rep. S57, messuage having doors and windows opening in a vacant lot adjoining, belonging to vendor: vendor cannot, unless there is a reservation of the right, build so as to shut the doors and windows — nor can his grantee lawfully stop them. It follows, from the principle of law, that when S. Wright conveyed the mill with the appurtenances,'to John, the whole current being necessary for the enjoyment of this grant, and used as an appurtenance to the mill, it passed as a necessary incident, so that neither he nor his assignee could do any^aet in derogation of that right, so as *70 in the smallest degree to injure the mill, either by detaining the water so as not to' leave a constant and sufficient flow for all the purposes to which it had' been applied, or by detaining it for some time and then letting it go, and thus obstructing the operations of the mill. And this, whether it was water, or the just right of the man holding the land above in common cases. For this would be an invasion' of the right which S. Wright had previously granted to John Wright, and it cannot be denied, that S. Wright had a power to restrain his dominion over his own land. In Nichols v. Chamberlayne, Cro. Jac. 121, it was held, that if the owner of a house builds a conduit thereto through his other land, and conveys the water by pipes to his house, and then sells the,house, with the appurtenances, excepting the land, the conduit and pipes pass, together with a right to dig and open the earth for the purpose of repairing the pipes and laying new ones, if necessary, and that because this was necessary to the use of the water, which was an appurtenant to the house. And in Blaine’s Lessee v. Chambers, 1 Serg. & Rawle, 169, it was stated by the court, for the same reason, that by a devise of a mill, with the appurtenances, the right to the use of the water, and the right to the piece of land which was used with the mill, &c. passed. In Pickering v. Stapler, 5 Serg. & Rawle, 507, a water right appurtenant to a mill, passed by the word appurtenances, which was considered as comprehensive of the water right, as if that privilege had been inserted in the conveyance, and that though the vendor declared when he executed the deed, that he neither bought nor sold the water right. So, by a sale of a mill, the water of the race will pass, though the land through which the race is cut, and the water passes to the mill, is not included in the land sold. Wetmore v. White, 2 Caines Cas. 87 But the anonymous case, 4 Dall. 147, is still stronger, if any thing can be stronger. There, in an action for obstructing a water course, by which the defendant’s meadow was watered, it appeared that the defendant had purchased a mill, with notice that the Vendor had before sold the meadow to the plaintiff, covenanting that the plaintiff might use the water over and above what was necessary for the mill. The defendant obstructed the water course, and the jury, by the advice of the court, found damages to the full value of the land, to be released on the defendant’s securing to the plaintiff the privilege. It has no weight with the court, that in the conveyance from Samuel Wright to John Wright, he does not describe the mill, or convey it by express words; for there is no common man so ignorant as not to know, that by a conveyance of land, all that is erected upon the land passes, all that is terrestrial. Without entering into the particular parts of the charge complained of, in the observations I have made, I have showed my opinion, that the charge was bottomed on an unsound foundation, and that the superstructure is without solid'principles of law to support it. *71 I will, however, lay my finger on one or two parts of the charge# in which I think the court misconceived the law, in the very essential point of the grant of S. Wright to J. Wright — that it did not restrain a subsequent purchaser from Samuel, of the adjoining lands, from using the water for all legal purposes to which it might be applied. This was a. just exposition, for Todd might have used it for this purpose, and in the way he has done, unless S. Wright had previously appropriated it. But the whole current had been appropriated, at least, so much of it as had been used with the mill, or was necessary for its enjoyment. Having disposed of it before to John Wright, he could not grant it to Atlee, and the conveyance to Altlee shows, that he did not, but that he excepted it out of his grant. The very statement would be sufficient to prove, that this was a disturbance by Todd, of the plaintiff’s right. A man erects a mill on a small stream, which has no more than a sufficiency of water — he sells it with the appurtenances — he after-wards sells a lot of land adjoining it, informing the purchaser that the mill tract has all the water right, and binds him in the covenant, or conveys to him on condition, that he will use the water only in a particular and very limited way. Can the vendee use it in any other way, so as to injure the man who-had previously bought the water right? Reason, justice, and law say no. This is a breach of the covenant, a violation of good faith. Further, the covenant entered into by Atlee, was an express one, “ not to divert or turn the water from a certain brook, running through the premises, or to waste any part of the water, except so far as should be absolutely necessary for supplying the tan-yard.” Cui bono, the covenant? To S. Wright it was a matter of indifference; he could not be damnified by its breach. Nominal damages could only be recovered under a covenant, that covenantee should not do any act, from the doing of which, no possible injury could arise to covenantor. It would be sine damno, and sine injuria; it would be useless, so far as respected S. Wright, and on an agreement so perfectly unnecessary, no action could be maintained, for useless agreements are void, both at, law and equity. 10 Mod. 135. 1 P. Wms. 191. It is the same to S. Wright as if he had bound Jlt~ lee in a penalty not to wash his face in the Waters of Shawnee run. Now, the law will .not construe any contract to be inoperative, if it can be made by any reasonable construction to bear on any existing matter. Such construction should be made of deeds, ut res magis valeat quam pereat. Deed, intended to pass lands one way, if it cannot take effect that way, may another. This agreement could only relate to the right of water, which S. Wright had before conveyed to his brother John, which it was quite natural for him to secure, when he disposed of the adjoining lands. It inhibited Jltlee from using the water, except so much as was absolutely necessary for supplying the tan-yard, and this excluded the use of it for any other purpose. This exception coptrouled the ge *72 neral words of the deed. The water necessary for the. supply of a tan-yard, was something very different from a grant of it for a bark mill. It might be very convenient for a tanner to have a bark mill, and to have a command of water for that purpose; but it is not absolutely necessary. The maxim expressio unius est ex-clusio alterius, will well apply here. I am not prepared to say, whether an action of covenant could be brought with the proper averments on this agreement, by the owners of the mill, against the assignees of the tan-yard, as a kind of covenant running with both tracts. A. granted land to B. and his heirs, for the use of a mill, yielding and paying to A. and the lawful heirs of his body, the privilege of grinding certain grain at the mill toll free. This is a contract running with the land, and the eldest son of A., after his death, may support an action against the assignee of the grantee, with notice of the charge. Dunbar v. Jumper, 4 Yeates, 74. In'equity, it would extend to the benefit of the owners of the mill, and chancery would enjoin the owners of the tan-yard from using the stream in any other way than is prescribed by the covenant. For it is certain, that if it did not pass with the mill tract, it remained with (S. Wright, and did not pass by his grant to jltlee, but was excluded from it. It is quite clear it was not a derelict. If it was, the first occupant who seized it, could hold it, and this occupant was the owner of the mill: and it cannot be imputed to (S. Wright, that like the dog in the manger, not being able to use it himself, he would not let any one else use it. Of all benefit from this covenant, explanatory at least of the previous grant of S. Wright, by the charge of the court, the plaintiffs were deprived; and of the restriction of the subsequent grant to Jltlee, the court considers it as res inter alios acta. Here, I think, there was error.. It had a most important influence on thé merits between these parties. Looking to the whole subject matter of the two grants, the will of Blunsion, the state of the parties, and the situation of the property, S. Wright could model his grant to Jltlee as he pleased, fie could require the stipulation, that the water should be used only for a special and very limited purpose. And, independent of these considerations, it afforded ample evidence under the special circumstances and long enjoyment, of a grant by Samuel Wright to John Wright of the whole water right, of which the defendant claiming under it had notice. For in 2 Esp. 636, Wilmot, J., said, where a house had been built 40 years, and had lights at the end of it, if the owner of the adjoining ground builds against it, so as to obstruct them, an action lies, and this is founded on the same reason as if they had been immemorial, and this is long enough to induce a presumption, that there was originally some agreement between the parties, and that as 20 years was sufficient to give a title in ejectment, he saw no reason why it should not entitle him to an easement belonging to the house. These actions for injuries to mills are frequent, the *73 rights of great value, the subject very interesting: the law should be settled. Sir Wm. Blackstone has comprised in one short sentence, the important principles, 2 Bl. 403. “ If a stream be unoccupied, I may erect a mill there, and detain the water, yet not so as to injure my neighbour’s prior mill, or meadow, for he hath by the first occupancy, acquired a property in the current.” And Christian, in his notes, says, “ any one may build a mill, and may detain or divert the water to supply it, provided he leaves sufficient for all the previous purposes to which it had been applied below, and provided he does not throw it back upon any other ground, or upon a previous mill above, so as to lessen the fall upon its wheels, and thereby to diminish the effect of his neighbour’s machinery.” This principle has been adopted in New-York. 10 Johns. 241. 3 Johns. Ch. 287. Chancery in such case, would grant an injunction. In Brown’s Case, 2 Vesey, 414, Lord Hardwick said, where there had been a previous possession, and enjoyment of the subject for three years, he’ would interpose by injunction; and Chancellor Kent observed, that the plaintiff was entitled to build what mills he pleased on his own ground, but that he must so exercise the right as not to interfere with the established and existing right of the other party. He must so construct his mill, and erect it in such a place, as that he may enjoy it consistently with the defendants enjoyment of his dam and water. And if his new mill interrupt the enjoyment of the prior dam and mill, it is a nuisance. My own opinion is, that this doctrine ought to be applied here. But as the case does not require it, the court refrain from deciding the cause on this principle, or laying down any general rule as to the right conferred by a previous occupation, standing alone.
This decision goes far to determine the whole matter in controversy between these parties. But as the cause is sent back, it is made the duty of the court to decide all the exceptions that have been taken to the rejection of the evidence. That part of the deposition of Samuel J. JLtlee, underscored and rejected, could only be objected to on the ground of the interrogatory being a leading one, and I confess, I think it was too pointed, and if the objection had been made on the examination for that reason, the answer should have been suppressed. But this was not done: it was' not objected to until the answers were given, and put down in writing. In Shaler v. Spear, 3 Binn. 130, it was decided, that a leading interrogatory put to a witness, should be objected to at the time it is put; it cannot be opposed on that ground alone, at the trial. This evidence was proper, to show how the water had been used, the eotemporaneous, and continued practical construction put on the lights of the parties, their own acts, and their own declarations. It was evidence of notice to JLtlee, of the grant to John Wright. It was evidence to prove an original agreement, though not reduced to writing, between Samuel and John, as to the water right, *74 It was part of the res gesta, the act of an owner, and the declaration of an owner in the actual possession, and on the very land. If the construction of the defendant be a just one, that the right to the use of the water remained in S. Wright, I cannot see any objection to the declaration of the rightful owner. For it is not pretended it was granted to Atlee, it is contended it is not in J. Wright’s grant, therefore, it remains with S. Wright. The declaration of S. Wright, that he had granted it to J. Wright, say by parol, if you please, with the possession accompanying it, to any man, at any time, and in any place, would be legal evidence, but made at the time, and on the occasion it was, it was evidence of an order as high as any writing of S. Wright could make it. It was an acknowledgment that the possession of J. Wright was founded on an agreement with. S. Wright. The evidence of John Klein, for the same reason, was admissible, and most weighty indeed, for 8. Wright not only said he had granted the whole water, but added, that it was all little enough for the mill below. Then, is it possible to distinguish this from the ease where the owner of the legal title says, “I have granted it to the man in possession.” This parol declaration would, in equity, be evidence of a transfer of the right to the land itself. Why should it not transfer the easement out of it? The evidence of the sole heir and personal representative of 8. Wright, should have been received on the trial j for the right of his father to the water, descended on him if it had not been granted to J. Wright. His declaration that the deed from his father had been taken, and always used for the purpose of protecting the mill in the use of the waters of Shawnee run, should have been received. It was evidence of a licence, if no mere, of 8, Wright, and of his heir, to the owner of the mill, to use the whole of the water, which being executed, could not be revoked, but which the owner had not revoked, but came into court and offered to swear it was still continued. If the right of the water was contained in the conveyance from S. Wright to J.- Wright, the action was maintainable. If 8. Wright declared always, that he had granted it to J. Wright, this sustained the action. If 8. Wright did not grant it, either by parol or writing, to J. Wright, and did not convey it to Atlee, then it remained in him, and the eyidence of his parol license, .and the license of his son and heir, would support it. The defendant cannot complain of the want of notice. The conveyance to Atlee informed him that he had no right to use the water in the way he did; and the possession of the mill, and the use of the water,-was notice sufficient to put him on his inquiry, and sufficient to affect him with the parol agreement of 8. Wright, and the parol license.
In all these views, the charge of the court, and the rejection of the evidence, were equally erroneous, and judgment must be reversed, and a venire de novo awarded.
Judgment reyersed, and a venire ^ facias de novo awarded.