## M'KIM and ARMSTRONG, *against* SOMERS.

### IN ERROR.

Where the plaintiff interrogated defendants witness, as to a conversation which had taken place between him and a certain W. B. ; and the witness stated the conversation, by which it appeared that he had not told W. B. all that he related in court, and the plaintiff then asked him "why did you not tell the whole truth to W. B.?" And the witness replied "I kept it back because I was living in plaintiff's house, as tenant, and if I had told it, he would have thrown me out neck and heels, he would have knocked my brains out ; as soon as he did know it, he took out a landlord's warrant," and the plaintiff then called W. B. and by him gave evidence to contradict the statement made of the conversation: *Held* that it was competent to the defendant to give evidence, that the plaintiff was a quarrelsome and dangerous man to those he had a prejudice against.

Wherever a person has colour of authority, and acts under a commission from the appointing power, but which it may be alleged has been forfeited by some act, perhaps of an equivocal nature, in all such cases the validity of the commission cannot be examined in a suit in which he is not a party. If a person usurp an authority to which he has no title, or colour of title, his acts would be simply void. But a colourable title to an office, can be examined only in a mode in which the officer is a party, and before the proper tribunal, the Supreme Court, in whom by act of assembly all the authority of the King's Bench is vested. It is not therefore competent, when a deposition is offered in evidence, and the commission of the justice of the peace, before whom it was taken, is shown ; to prove that, after he was commissioned, he removed out of his proper county, where the deposition was taken, and thereby vacated his office.

When a party has an opportunity of being present at the taking of a deposition, and does not choose to avail himself of it, he shall not afterwards be permitted to except to a leading question, and answer in such deposition, or to make formal objections against it. When a party attends, and objects to the form of the question, then if the opposite party persists, he does it at his peril.

ERROR to the District Court for the city and county of Lancaster.

On the trial of this cause, the defendant, who is also the defendant in error, for the purpose of proving a payment of one hundred and twenty dollars to the plaintiffs, examined a witness of the name of *Jeffries Marsh*, who in his examination in chief, testified to the fact of the payment. For the purpose of destroying the testimony of the witness, the plaintiffs interrogated him, on his cross examination, as to a conversation which had taken place between him and a certain *Wallace Boyd*. The witness stated the conversation, by which it appeared, that he had not told to *Boyd*, in that conversation, all that he related in court. Whereupon the plaintiff's counsel asked him the following question : " Why did you not tell the whole truth to *Wallace Boyd*?" To which he replied as follows : " I was not on my oath, and I was not bound to confess to *Wallace Boyd*. The reason I kept it back was, I was living in *Wm.*

(M'Kim and Armstrong *v.* Somers.)

*M⸳Kim's* house as tenant, and if I had told it, he would have thrown me out neck and heels. If I had begun that kind of talk, he would have knocked my brains out; you would not have been troubled with judge and jury. As soon as he did know it, he took out a landlord's warrant." After the defendant had gone through his testimony in chief and rested, the plaintiff called *Wallace Boyd* for the purpose, among other things, of contradicting the statement made by *Jeffries Marsh*, of the conversation which he alledged he had had with *William Boyd*. The defendant then offered to prove by *Boyd*, that *M⸳Kim* was a quarrelsome and dangerous man to those he had a prejudice against; to this testimony, which was received by the court, the plaintiff excepted. The plaintiff also objected to the admission of a deposition in evidence, on the ground that *Joel C. Bailey*, the person before whom it was taken, was not a justice of the peace. On the objection being made, the defendant read in evidence a commission from the Governor, bearing date the 28th March, 1821. The plaintiff then offered to prove "that since the date of the commission the said *Bailey* removed from the county of Chester." (in which he had been commissioned, and where the deposition had been taken,) " to the city of Philadelphia, that he rented a tavern in the city, and kept a tavern there for eighteen months, and afterwards returned to reside in Chester county; that during his residence in Philadelphia, another justice was appointed in his stead, in the district where *Bailey* had been a justice." The court refused to receive this testimony, and admitted the deposition, and sealed a second bill of exception. The plaintiffs, who were present when the deposition was taken, but objected to its being taken, on the ground that *Bailey* had no authority to take it, and took no part in taking it, objected to the admission in evidence of this question, and answer in the deposition. Question by defendant, " did captain M'Kim tell you that he had received one hundred dollars of me in *Wilmington* and *Brandywine* money." Answer "yes." The court overruled the objection and the bill thereupon sealed constituted the third bill of exceptions. The plaintiffs in error, who were also plaintiffs below, now assigned error in each of these bills of exception.

*Parke* for the plaintiff in error. The plaintiffs did not attempt to disprove the reason why the witness had not told *Boyd* the whole truth, the evidence given by them went to impair his testimony on other grounds. The testimony then as to the character of *M⸳Kim*, was not in contradiction to any evidence given by the plaintiffs, but wholly irrelevant, and introduced to fortify a witness, who as to this point had not been attacked; and this too in violation of the well established rule, that the character of the party in a civil suit cannot be given in evidence. *Anderson* v. *Long*, 10 *Serg. & Rawle*, 60. *Nash* v. *Gilkeson*, 5 *Serg. & Rawle*, 352.

(M'Kim and Armstrong, *v.* Somers.)

Second bill of exception. The commission of a justice of the peace is vacated by his removal out of the county, (within which he is commissioned,) *animo residendi.* The county bounds the jurisdiction of a justice, the district for which he is commissioned is his residence. *Respublica* v. *M'Clean*, 4 *Yeates*, 399. *Commonwealth* v. *Sheriff of Northumberland*, 4 *Serg. & Rawle*, 275. It was proper to prove that the justice had by removal vacated his commission, and had consequently no power to administer the oath to the witness. *Osburn* v. *Ross*, 3 *Bin.* 539. The deposition could only be taken by a person having that power. *Keller* v. *Nutz*, 5 *Serg. & Rawle*, 246.

The defendant is not helped by the distinction between officers *de facto* and *de jure.* There cannot be a justice of the peace *de facto*, he exists *de jure*, or not at all. An officer *de facto* comes in by colour of right, in which case his office is vacated on a *quo warranto.* A bare swearing in and acting does not make a man an officer *de facto*, and unless there is some form of election, he is a mere usurper. *Rex* v. *Lisle*, 2 *Strange*, 1090. *Andrews*, 163. *Baird* v. *Bank of Washington*, 11 *Serg. & Rawle*, 411. If a justice resigns he ceases to be a justice, and any act done by him after such resignation, would be the act of a mere usurper. His removal from his proper county has the same effect, it vacates his office *de facto* and *de jure*; after this he could not be sued for any act done as an officer, for which otherwise he would have been officially responsible; nor would the individual who made a deposition before him, be indictable for perjury in case the deposition was false. Public policy too, requires, that in this country, where officers are continually changing by election or appointment, that their power should cease as to all the world, when they go out of office.

As to the third bill of exception, he contended that where the party refuses to take any part in taking a deposition, he must be considered as absent, and in that case, if a leading question be put and answered, and received in evidence it would be error.

*W. Hopkins* and *Hopkins* for the defendant in error, were desired by the court to confine their argument to the 2nd bill of exceptions. Whether the justice of the peace, before whom the deposition was taken had *de jure* a right to exercise the powers of that office, was not open for enquiry in a collateral proceeding. It was enough to show, as was done by producing his commission, that he acted by *colour of office*, in the district for which he had been appointed. Indeed as to third persons, it is enough to prove that he acted as a public officer, without producing his appointment. *Porter* v. *Luther*, 3 *Johns. R.* 431. He is an officer *de facto*, and that is all we were required to show, and where such officer claims to exercise his office, his right cannot be brought into question in a proceeding to which he is not a party. *Commonwealth* v. *Fowler*, 10 *Mass. R.* 290. In all collateral controversies, in which the officer *de facto* is not a

(M'Kim and Armstrong, *v*. Somers.)

party, his acts are conclusive as to his authority. *Parker* v. *Luff-borough*, 10 *Serg. & Rawle*, 249. *Baird* v. *Bank of Washington*, 11 *Serg. & Rawle*, 411. *Riddle* v. *County of Bedford*, 7 *Serg. & Rawle*, 386. The attempt in a collateral way to enquire on the part of third persons into the complicated question, as to the right particu-larly of a judicial officer to exercise his office, must be always abor-tive as it respects the officer, who would not be bound by a proceed-ing in which he is no party, and productive of an obstruction of justice, as it regards others, who are usually ignorant of the precise circumstances in regard to the authority claimed and exercised. The cases relied on by the plaintiffs in error, are cases in which the officer was himself a party, instituted for the very purpose of en-quiring into the authority by which he claimed the office, and in some of these cases the distinction is taken between such direct en-quiry, and where it is made in a collateral proceeding. In the former the right may be enquired into, in the latter it cannot.

*Buchanan*, in reply. The question put to the witness as to the reason why he had withheld the whole truth from *Boyd*, was a per-tinent question, and the answer of the witness was uncontradicted, and should never have been permitted to be made the ground of an attack upon the plaintiff, calculated to have an influence upon the jury, wholly distinct from the object professed. *Starkie Ev.* 4 *pt.* 366. Neither reputation of character nor facts establishing character are proper for enquiry, even although the character of the party is incidentally in issue, by charging a fraud upon him. *Phil. Ev.* 139. Were it otherwise, an endless enquiry would be opened. If the party could get a witness to say his adversary was a quarrelsome man, he may, to corroborate his witness, according to the doctrine established by the court below, go into proof that he is quarrelsome, and then an interminable investigation is open as to circumstances of provocation, the measure of revenge, or the nature of transactions involving the acts of his whole life, and leading off from the issue between the parties.

Second bill of exception. There was no attempt on the part of the defendants to prove that the justice was an acting justice of the peace, but he relied on his commission to estab-lish, that *de jure* he was such justice. If it had been proved that he acted as a justice, the case might fall within the principle of some of the cases cited, giving to his acts the character of those of an officer *de facto*. But that point is not presented, but the enquiry is, whether an individual, who does a *single act* as a judicial officer, shall be considered as having full power to do that act, without any right on the part of those who are effected by it, to enquire into his authority. It is an important right to have wit-nesses examined in open court, in the presence of the court and jury; but to permit a deposition to be taken by a person who is without power to administer an oath, and as a consequence, that the witness shall not be responsible for false swearing in taking that

oath, is a monstrous violation of the wholesome principles of the common law.

The cases relied on by the defendants in error, are cases of ministerial officers, whose authority had been conferred, but some requisites omitted: as to third persons, their acts are not open to enquiry. But in no case has it been held, that it may not be shown that a person claiming to exercise a judicial office has no authority to do so; and that the fact of his acting, is conclusive upon third persons as to his right to act. 4 *Starkie Ev.* 4 *pt.* 1135.

On the third bill of exceptions, he referred to *Withers* v. *Gillespy*, 7 *Serg. & Rawle*, 10. *Sheeler* v. *Speer*, 3 *Bin.* 132. *Strickler* v. *Tod*, 10 *Serg. & Rawle*, 63.

The opinion of the court was delivered by

Rogers, J. (who recapitulated the facts of the case.) When it is recollected that *Jeffries Marsh* was a principal witness for the defendant, and that the plaintiff had attempted to impeach his veracity on his cross-examination, and by the evidence of a witness, to contradict him, it became a matter of vital importance to the defendant and the witness himself, that he should be sustained. It is in vain for the plaintiff's counsel to say, that they had not attacked the character of the defendant's witness, for this is expressly contradicted by the bill of exceptions. *Marsh* says the reason he did not tell to *Wallace Boyd*, what he knew of the payment, was a fear arising from the violent temper of *William M'Kim*. And this reason, if true to the extent stated, would account satisfactorily to the jury, for the suppression of part of what he knew in relation to the alleged payment. It became then important that facts should not rest upon his testimony alone; and there can be no doubt that the defendant would have a right to fortify his case by proving by other witnesses, the truth of the facts stated by him, as reasons for his conduct. For instance, it would have been competent for him to show that the witness was living at the time in *M'Kim's* house as tenant, and also to prove that as soon as *M'Kim* knew he had spoken about it, he had taken out a landlord's warrant. But it is said that the evidence which is admitted is putting the plaintiff's character in issue, and that this cannot be done in an action of *assumpsit*, and for this the plaintiff's counsel have cited *Philips* and *Starkie*. No person pretends to dispute the general principle. This is not an attempt to put in issue the character of *William M'Kim*, but to prove from the knowledge of the plaintiff's witness himself, the fact that *William M'Kim* was a quarrelsome and dangerous man, to those he had a prejudice against. And this evidence, it will be recollected, is given to shield the character of a witness who had been attacked by the plaintiff. If this evidence leads to an enquiry which might effect

(M‹Kim and Armstrong, *v.* Somers.)

the standing of *M‹Kim*, he has his own counsel to thank for it; for it was in answer to an enquiry from them, that he gave the reason why he did not state to *Wallace Boyd*, all he knew of the transaction. Had the counsel for the defendant omitted to prove the temper and disposition of *M‹Kim*, no doubt the jury would have been told that it was a mere excuse, totally untrue, resting on his own statement, and perfectly ridiculous in itself. The temper of *M‹Kim* gave probability to the reason assigned by the witness, and in this point of view it was material that no doubt should rest upon it. It is too much the habit of counsel to abuse and villify witnesses. It is the duty of the court to protect them, by affording them some latitude to defend themselves from the slanders which are often heaped upon them, Under the peculiar circumstances of this case, we are clearly of opinion that the testimony was rightly admitted by the court.

The plaintiff also objected to the admission of a deposition in evidence, on the ground that *Joel C. Bailey*, the person before whom the deposition was taken, was not a justice of the peace. Whether the facts alleged in the bill of exceptions would vacate the commission of the justice, we are not called on to determine. Whenever an information is filed, it will be time enough to determine the question. At present, we would think it improper even to intimate an opinion. And this is not accorded to Mr. *Bailey* as a favour, but is nothing more than common, even-handed justice, that he should have an opportunity of being heard, and be permitted, if occasion should require it, either to traverse the facts, or contradict the conclusions of law attempted to be drawn from them. It would be the height of injustice if we were now to determine, or even suffer his right to hold his commission to be called in question, in a cause in which he is no party, and cannot be heard. The counsel for the defendant objected to the court going into the question whether he was a justice *de jure* at all, and in this we conceive they were in the strict line of their duty. They contended, and with a force which has not been weakened by the reply, that it was sufficient for their purpose that he held a commission from competent authority, and that in taking the deposition, which is an official act, he was acting in the district for which he was appointed; that this constituted him a justice *de facto*, with at least colourable authority; and that as long as the commission remained, without being superseded by the Governor or vacated by the Supreme Court, the validity of his acts could not be questioned. One would have supposed that these reasonable objections would have been entitled to some respect. For, setting aside the extreme injustice of impeaching, or even impairing the right to an office, without giving an opportunity of hearing to the party principally effected by the decision, the inconvenience, and I may

(M'Kim and Armstrong, *v.* Somers.)

add, in some cases, the indelicacy of the inquiry, would be intolerable. If the plaintiffs had been heard in this preliminary matter, the opposite party would have been permitted to controvert the facts by the introduction of testimony on their part. And this would open a scene which I should be sorry to see exhibited in a court of justice. An examination would ensue before the court, which in some cases would last a week, whether a deposition should be received, in a cause of the most trifling nature and amount. As the court would be both judge and jury, the inconvenience of this novel doctrine would cause them to pause before they acceded to it. If I understood the counsel, they admitted the law in its full force, as respects ministerial officers, but denied it as regards judicial officers. I should have been pleased to have seen some authority in which the distinction is taken: the reason for such a distinction is not very apparent. If this be law, as regards ministerial officers, which may be shown by a host of authority. I say, *a fortiori* it should be so held in the case of judicial officers. The law is founded on policy and convenience, reasons which apply with tenfold force to officers of the latter description. The constitutionality of the laws establishing the several District Courts of this State has been denied by some, although I am not among the number. Would the Common Pleas of Lancaster, York, or the city of Philadelphia have a right to call in question the validity of the commissions of the judges of these courts, on an objection to the reading of a deposition? Nay more, would every court of Common Pleas, or justice of the peace in the State have the same power, would a justice of the peace or Court of Common Pleas have a right to question the commission of one of the judges of the Supreme Court, on an allegation of a removal from the State? We occasionally visit our friends in the neighbouring States, and it would be a singular spectacle if our offices should be vacated in our absence, on the plea that we had become citizens of another state. If this should be law, offices are held by a most precarious tenure. No court professing the slightest tincture of judicial science, have ever undertaken to examine the right to office, either on *writ of error, certiorari,* or when the matter came incidentally before them. In the *Commonwealth* v. *Bache,* this question came before the Supreme Court. *Richard Bache* was indicted for an assault and battery on Alderman *Binns.* The indictment contained two counts: one for an assault and battery; the other for an assault and battery upon Alderman *Binns,* while in the execution of the duties of his office. It was the opinion of the whole court, that Mr. *Binns'* right to the office he held, could not be questioned on the indictment; and we accordingly suspended giving judgment, and put *Bache* to an information, in the nature of a writ of *quo warranto.* This case is exceedingly strong, for the act of assembly

(M'Kim and Armstrong, *v.* Somers.)

enacts in express terms, that the acceptance of certain commissions named in the act, makes the commissions of alderman, justices of the peace, &c. null and void. It is strange that if the law be as stated by the counsel for the plaintiff in error, we have not some trace of it in some adjudged case, or elementary treatise.

The pivot on which the argument of the plaintiff's counsel turned, was that a false oath, taken before such a justice, is not punishable as perjury. For this I should also have been glad to have had some authority. So far from this position being correct, I find the law differently stated in 2 *Hawkins*, 89, a book of undoubted authority, and in a case bearing great analogy to the present. It has been adjudged, says the commentator, that a false oath, taken before persons, who having been commissioned to examine witnesses, happen to proceed after the demise of the King, who gave them their commissions, and before notice thereof, may be punished as perjury: for it would be of the utmost ill consequence to make such proceeding void; and therefore, though all commissions legally determine by the demise of the King who gave them, without any notice, yet for the necessity of the case, whatever is done before such notice, must be suffered to stand good: for otherwise the most innocent and most deserving subject would be unavoidably exposed to numberless prosecutions for doing their duties, without any colour of fault. I put this case; would the Court of Quarter Sessions of this county, suffer the constitutionality of the law establishing the District Court to be enquired into, on an indictment for perjury, committed in a cause tried before the District Court?

The distinction is between oaths taken before persons merely acting in a private capacity, and those who take upon them to administer oaths of a public nature, without legal authority, or colour of authority. Wherever persons who have colour of authority, acting under commissions from the appointing power, but which it may be alleged have been forfeited by some act which may perhaps be of an equivocal nature, in all such cases the validity of the commissions cannot be examined in a suit in which they are not a party. The regular, and indeed the only mode is by information. If a person usurps an authority to which he has no title nor colour of title, that would present a different case; for every act of such a person would be simply void. But the law pays such respect to those who are clothed with even colourable title, as not to permit the title to be examined except in a mode in which they are parties, and before the proper tribunal, the Supreme Court, in whom by act of Assembly, all the authority of the Court of the King's Bench is vested.

The plaintiff in error further objects to the admission of the following question and answer, in the deposition. Question, by

(M'Kim and Armstrong, *v.* Somers.)

defendant—" Did Captain *M'Kim* tell you that he had received one hundred dollars of me, in Wilmington and Brandywine money?" Answer—" Yes." This was opposed on the ground that it was a leading question. The court overruled the objection, and of this the plaintiffs in error also complain. At common law, depositions were not received in evidence, and if received at all, it was with great caution. It was thought, and justly too, that *viva voce* testimony was much better than depositions. But experience has taught us, as commercial transactions multiplied, and commerce extended, that the use of depositions tends to expedite causes, and indeed is indispensable in the administration of justice. Hence in modern times, they are guarded, but not put under unnecessary restraints. In *Shaler* v. *Spear*, 3 *Bin,* 130, it was decided that a leading interrogatory put to a witness, should be objected to at the time it was put; it cannot be objected to on that ground alone at the trial. And in *Strickler* v. *Tod*, 10 *Serg. & Rawle*, 70, the same principle was recognized. It is said, and perhaps truly, that both parties appeared at the taking of the deposition, though this does not appear in *Strickler v. Tod.* And in neither case is the decision put upon that ground. Although *M'Kim* was not actually present at the time the question was asked, yet he might have been present. Instead of attending to the taking of the deposition, he enters a protest against taking it at all, without stating his reasons; and therefore, (not because he had no notice,) it was taken in his absence. When a party has an opportunity of being present, and does not choose to avail himself of it, he shall not afterwards be permitted to make formal objections against it. Depositions are frequently taken by the parties themselves, without the aid of counsel, and are generally very inartificially drawn. If we were to listen to captious objections, it would impair the utility of such proof, particularly in case of death. When a party attends, and objects to the form of the question, then if the opposite party persists, he does so at his peril. This is giving suitors every advantage which policy requires, and I am not for extending the privilege any further.

Judgment affirmed.