## M'Kellip *against* M'Ilhenny.

A defendant having given the plaintiff a notice to produce a paper mater to the issue, which he refused to do, although in his possession, may give parol evidence of the contents of it.

In an action for a nuisance in flowing water back upon the land of the plaintiff, by means of a mill-dam, it is competent for the defendant to establish a parol license, from a former owner of the plaintiff's land, to erect the dam and flood his land.

A parol license from the known agent of a foreign land company, to erect a mill-dam, and flow the water back upon their lands, may be given in evidence in an action for a nuisance by a purchaser from the company.

A parol license to erect a mill-dam, by which the lands above will be covered with water when executed, is binding upon all subsequent purchasers of the lands affected: such license may be revoked before its execution, but after it, is irrevocable.

In an action for a nuisance in the erection of a mill-dam, by overflowing the plaintiff's land, his declarations, or those of any former owner of the land made while he was the owner, respecting the defendant's right to do so, may be given in evidence by the defendant.

The acquiescense of all preceding owners of land, overflowed with water by reason of the erection of a mill-dam in the stream below, is to be taken into the computation, in order to raise the presumption of so long an acquiescence as would bar a present owner from a recovery in an action for a nuisance.

ERROR to the common pleas of *Armstrong* county.

Robert M'Ilhenny *v.* Archibald M'Kellip. Action on the case for a nuisance. The facts which gave rise to the several points in this case are fully stated in the opinion of the court.

*Buffington* and *Coulter,* for plaintiff in error.
*Stannard* and *White,* for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—M'Kellip, the plaintiff in error, was the defendant below, and it appears from the evidence that he and the plaintiff below severally owned a tract or parcel of land, adjoining to each other, lying on a stream of water called Pine Run, which runs through both tracts. The land belonging to the plaintiff below lies above that of the defendant on the stream. These parcels of land were purchased originally from the state by an association of persons known and called by the name of the Holland Land Company. The legal title for that part of the plaintiff's land in which he alleges he has been injured by the acts and conduct of the defendant, as also for the whole of the defendant's land, was at one time vested in Paul Busti, in trust for the company, for whom he acted as a general agent, and was known for many years to exercise unlimited power

in disposing of their lands. The land thus holden in trust by Busti, was conveyed by him to Benjamin B. Cooper, from whom the plaintiff and defendant, respectively, as the defendant offered to show, derived their several rights or claims to their respective adjoining lands. This also would seem to be inferable from the evidence given in the cause; because the plaintiff read in evidence a patent from the state to Paul Busti for nine hundred and ninety acres, surveyed on warrant No. 3062, and a deed executed by Paul Busti, conveying the same to Benjamin B. Cooper, who by his deed given in evidence by the defendant, conveyed two hundred and eighty-four acres one hundred and twenty-five perches thereof to the defendant; and who also, by articles of agreement made with James Brady, as appears by the testimony of David Lawson and John C. Corbet, Esq., sold part of the residue, adjoining that conveyed to the defendant, to James Brady, who assigned his right of purchase under the articles of agreement to the plaintiff; by means whereof he obtained a conveyance for the same from Benjamin B. Cooper, executed by C. C. Gaskill his attorney in fact, who was also the attorney in fact of J. J. Vanderkemp, the person from whom the plaintiff got his title by deed of bargain and sale for the residue of his land. This is a brief, but I believe, a correct statement of the facts and evidence in relation to the titles of the parties to their respective lands, so far as I have been able to collect it from the paper book furnished, which presents the case but indistinctly.

The first error assigned is, that the court below erred in rejecting the evidence offered by the defendant as set forth in the various bills of exception, amounting to eleven in number.

As to the first, the defendant—after having given evidence showing that the attorneys of the plaintiff had in their possession certain articles of agreement made between Benjamin B. Cooper by his attorney in fact David Lawson of the first part, and James Brady of the second part, whereby the first, as it is alleged, sold to the latter the land in which the plaintiff complains he was injured, which articles, by indorsement made in writing on the back thereof, were assigned by Brady, together with his interest in the land thereby agreed to be sold, to the plaintiff; and having shown, likewise, that a notice had been served on the plaintiff a reasonable time beforehand, to produce the articles of agreement with the indorsement thereon upon the trial of the cause, who declined to produce the same—offered to give parol evidence of the execution and contents thereof: to which the plaintiff's counsel objected, and the court overruled the evidence. It does not appear upon what ground it was that the court rejected this evidence, nor can I form even a conjecture of it. In connexion with the other evidence offered to be given on the part of the defendant, it was certainly very material to the issue, and the defendant unquestionably showed that he had done all that the law required of him to entitle him to give the secondary evidence offered. It was proved distinctly that the originals, which were doubtless the best

evidence of what they were, were in the hands of the plaintiff's counsel at a former trial of the cause, and being writings which belonged to the plaintiff as part of the muniments of his title to his land, the conclusion clearly was that he could have produced them if he had pleased; so that there was no ground for rejecting the evidence offered, because the best evidence of the matters proposed to be proved was not produced. Nor can it well be, I think, that the court rejected the evidence offered because the letter of attorney authorizing David Lawson to execute the articles of agreement on behalf of Benjamin B. Cooper, was not produced and proved; because that was offered to be done afterwards and rejected by the court, which gave rise to the third bill of exception. Being able, then, to perceive no good reason why the evidence in this exception was overruled by the court, we think that they erred in doing so.

The second bill of exception was to the opinion of the court in rejecting a letter-of attorney from Paul Busti to Daniel Lawson, dated the 19th of August 1811. If this were the only error assigned in the case, I am not satisfied that the judgment of the court below ought to be reversed on account of it, for I am not able to discover clearly that it could have had any material bearing on the cause: still, as Paul Busti appears to have been invested with the legal title to the land of both parties, and was known to exercise all the power over the lands of the Holland Company that ownership itself could give, at the date of this letter of attorney; it might have had a very important bearing on the cause, if Lawson had under it given to the defendant leave to build his mill-dam originally in the manner he did. This, however, does not appear from the paper book to have been the purpose for which it was offered; nor does it appear distinctly for what end it was proposed to be read in evidence; and therefore we cannot say there was error in rejecting it.

The third bill of exception was to the opinion of the court in rejecting the letter of attorney of Benjamin B. Cooper to David Lawson. If the execution of this letter of attorney was either offered to be proved by the defendant's counsel, or admitted by the plaintiff or his counsel, the court below ought to have admitted it to be read in evidence; because it would have shown David Lawson's authority as the attorney in fact of Benjamin B. Cooper, for encouraging the defendant to go on and expend money in improving and maintaining his mill and dam.

The fourth bill of exception was for rejecting the defendant's offer to prove by David Lawson that he never had any other power of attorney emanating from the Holland Land Company than the one from Paul Busti. Not being able to perceive the relevancy of this evidence to the issue, we cannot say that the court erred in rejecting it.

The fifth bill of exception is to the rejection of the defendant's offer to prove by David Lawson that he, as the attorney in fact of Benjamin B. Cooper, within a year after the date of the deed from Paul Busti to

[M'Kellip v. M'Ilhenny.]

Cooper, granted to the defendant the privilege of continuing and keeping up a dam in the place where it then was; that Cooper had a number of tracts of land in the same neighbourhood, and that the act of Lawson in thus granting this privilege to the defendant was approved of by Cooper himself afterwards; and that M'Ilhenny, the plaintiff, was informed of it and assented to it also. This evidence, in connexion with the other testimony offered by the defendant and rejected by the court, some of which would have tended to have shown that the privilege of building the dam was granted verbally to the defendant before he erected or constructed it, was admissible under the peculiar circumstances of the case, in order to show a confirmation of the original grant, and that all concerned were perfectly satisfied at one time, when perhaps the mill was a great advantage to them but an injury to the defendant on account of the expense attending it exceeding the profits thereof, that he should have for the use of it the privilege of erecting his dam as he has done, and overflowing the land granted afterwards to the plaintiff without exception, through mistake or perhaps something worse. Besides, the circumstances of Benjamin B. Cooper having other lands in the vicinity of the mill which he wanted to sell, and the country being then but sparsely settled and the most of the land in it wild and unimproved, were strong reasons, as well as pressing considerations, why he should have been not only willing to grant such a privilege, but most anxious that the mill should be maintained and continued; because it tended to enhance the value of his other lands, as well as to render them more saleable. It has been truly said that he who first builds a grist mill in a new country, when it is first about to be settled, is regarded as a public benefactor; because it is almost universally attended with an expense and trouble to the owner, exceeding the immediate profit of it so far, that it would never be undertaken or endured, were it not for the distant prospect that presents itself of the party's receiving remuneration after the country around shall have been settled and improved. But if he is to be deprived of the use of his mill as soon as that comes to be the case, by revoking the privilege conceded to him to induce him to erect it and to incur the expense afterwards for a series of years of keeping it in good order and repair, it is evident that great injustice might be done to him. We therefore think the evidence ought to have been received.

The sixth bill of exception is to the opinion of the court in refusing to permit the defendant to prove that Hiram Jan Huidekoper, was the known, notorious and acknowledged agent of the Holland Land Company, and especially for the land on which the plaintiff alleged the nuisance was created; and that as such he granted to the defendant the privilege of erecting the dam and flowing back the water in the manner he has done, and that the grant was made by Huidekoper in the year 1812 or 1813, before the defendant built his dam or mill; and as a further inducement to the defendant to erect his mill, that Huidekoper proposed and promised to release

three years interest on the purchase money of the defendant's land, which was accordingly done afterwards, on the 10th of April 1819, by the agent of Benjamin B. Cooper, who had become the assignee of the Holland Land Company, and then made a title to the defendant for his land.   It is very obvious that this evidence, had it been received, might have had a very important bearing on the cause, and have turned the scale at once with the jury in favour of the defendant.   But why was it not receivable?   Is it because it was an exercise of authority and dominion over land, disposing of, as it were, an interest in it, and therefore not admissible, unless such authority, as well as the act in pursuance of it, were shown to be in writing, according to the statute against frauds and perjuries, which requires that the creation or transfer of an interest in land, excepting a lease for a term not exceeding three years from the making thereof, shall be in writing and signed by the party creating or making the same, or his agent thereunto lawfully authorized by writing?   Owing to the peculiar situation of the Holland Land Company, who were all foreigners, residing abroad in a foreign country, and who could not, therefore, act or do any thing in regard to their lands excepting by their agents, it would seem that to have shown by parol evidence, that Mr Huidekoper had acted as their agent in taking care of their lands and disposing of them to the best advantage for the owners, and that titles had been made to the purchasers thereof in conformity to the agreements made and entered into by him for that purpose, in short that he had acted as their agent, both before and after the time when the license was alleged to have been given by him to the defendant to erect his dam, in superintending and disposing of their lands as he pleased and thought best for the interest of the company, and had been recognized and considered as such during that time, without any question having ever been made of his authority by the company, but on the contrary, his acts and agreements done and made on their behalf, approved and fulfilled, would have been sufficient to authorize the jury in drawing the conclusion, that his authority for whatever he did as agent of the company, in disposing of their lands or granting any interest or privilege therein or out of the same, was such at least as the law required, in order to render his acts, in this respect, effectual and binding upon the company.   Rex *v.* Bigg, 3 *P. Wms* 427 ; Neal *v.* Erving, 1 *Esp. N. P. C.* 61.

And as to the second question involved in this exception, whether the license, being merely oral, was good and available or not, it was laid down by Houghton, justice, in Webb *v.* Pater Noster, *Palm.* 74, S. C., 2 *Roll. Rep.* 143, 152; *Poph.* 151, that such license, as long as it remains unexecuted, is countermandable, but otherwise when executed; it becomes binding then on the party granting it.   And this doctrine is fully sustained and confirmed by the case of Winter *v.* Brockwell, 8 *East* 309, 310, where a parol license to erect a skylight over the defendant's area, which impeded the light and air

from coming to the plaintiff's dwellinghouse through a window, was determined not to be revocable at pleasure, after it had been executed at the defendant's expense ; and the action, which was for a private nuisance, in stopping the light and air, &c., and communicating a stench from the defendant's premises to the plaintiff's house, by means of the skylight, was held, therefore, not to lie.   The same principle is also recognized and was adopted by this court in Strickler *v.* Todd, 10 *Serg. & Rawle* 74.   And again, in Rerick *v.* Kern, 14 *Serg. & Rawle* 267, it was held, that a parol license given without consideration to use the water of a stream for a saw-mill, in consequence of which the grantee went to the expense of erecting a mill, could not be revoked by the grantor at his pleasure ; and that by diverting the water contrary to his agreement, to the injury of the grantee, he made himself liable to pay damages in an action at the suit of the latter.   And these cases are likewise a sufficient answer to the objection, that the privilege claimed to have been granted here was either an incorporeal right, and if so, ought therefore to have been granted by deed ; or if not, that it was an interest in the land and ought therefore to have been granted at least by a writing signed, according to the statute of frauds, by the party granting it, or his agent authorized by writing so to do.   For these cases show that wherever a party has induced another upon the faith of his promise, though verbal, to expend his money or labour, for which he can only be remunerated by the enjoyment of the thing so promised, equity will compel the promissor to give such deed or writing as shall be requisite to secure the promissee in the perfect enjoyment of what was promised.   But here, where we have no court of chancery to resort to in order to compel such a thing to be done, it will be considered in our courts of law as actually done, and the grantee or promissee protected in the enjoyment of the *thing promised* accordingly.   But it may be questionable whether the license claimed here falls within the statute of frauds ; for in Wood *v.* Lake, *Sayer's Rep.* 3, where the plaintiff had made a parol agreement with the defendant, that he should have the liberty of stacking coals upon a part of a close belong to the defendant, for a term of seven years, and that during the term he should have the *sole use* of that part of the close upon which he was to have the liberty of stacking coals ; in pursuance whereof, the plaintiff had enjoyed the liberty of stacking coals three years of the seven, when the defendant locked the gate of the close and prevented him from longer stacking coals according to the agreement, it was held that the agreement was good and not within the statute, because it was only for an easement and not for an interest in the land.   Now I am inclined to think, that whether the agreement be for a privilege to cover the land of another with coal or with water, can make no material difference so as to bring the one within the statute more than the other.   The testimony, we think, ought to have been received, and the court erred in rejecting it.

[M'Kellip v. M'Ilhenny.]

In regard to the seventh exception which was taken to the opinion of the court, in rejecting the deposition of Lawrence Bowman, on account of the subject matter of it as it is said, we can give no opinion, because the contents of the deposition have not been placed on our paper books so that we may know what they are.

The eighth and ninth bills of exception present the same question, and one which, among others, seems to have been decided in the case of Strickler *v.* Todd, 10 *Serg. & Rawle* 73, 74. There it was ruled that the declarations and admissions of those under whom the defendant claimed title to his land, made while they respectively were the owners of the land through which the stream of water ran that the defendant claimed to have the privilege of using for his mill without any diminution or obstruction in the course thereof by the plaintiff within the boundaries of his land, tending to show that the privilege had been granted, were admissible. Why then were not the declarations and admissions of M'Ilhenny the plaintiff, that M'Kellip the defendant had the grant of a right and privilege to erect his dam and to cause the water to overflow the plaintiff's land, as he has done, admissible to establish the defendant's right to do so? Most clearly they were, because, if true, of which the jury and not the court were to judge, they went to prove that the defendant had a license or right granted to him, at least by word of mouth, if not by deed or writing, either of which, when executed, has been shown to be sufficient not only to justify him in erecting his dam for the use of his mill as he did, but to entitle him to the full benefit and enjoyment of it afterwards. The testimony of Corbet is also to this effect, but seems to have been admitted without objection, otherwise, it is probable, it would have been rejected upon the same ground with that mentioned in this bill of exception. The court in their charge to the jury notice the testimony given by Corbet on this point, and in order, as it appears to me, to repel the natural effect of it, have given rather a strange turn to it, by saying that " the plaintiff may have been led to believe in such gift or license by the allegations of the defendant or other persons." Now it does not appear from the evidence that the plaintiff ever pretended that he had gotten his information or knowledge of the grant of the privilege to the defendant from such a source ; and why the court should have suggested it to the jury, without any thing to warrant it, I cannot imagine : but I can readily perceive that it might have prevented the evidence from producing the effect upon the minds of the jury which it ought to have done, if they believed that such declarations and admissions had been made by the plaintiff.

We are also of opinion that the testimony mentioned in the tenth and eleventh bills of exception was admissible, and that the court erred in rejecting it. It is of a character similar to that set forth in the eighth and ninth bills of exception ; not only tending to prove, by the declarations and admissions of the plaintiff, the grant of the privilege to the defendant, but going to prove a formal agreement made

[M'Kellip v. M'Ilhenny.]

between the plaintiff and the defendant, for carrying *into* effect an arrangement by which the latter was to have his right to the privilege perfected, by an exception or clause to be introduced into the deed of conveyance which the plaintiff was to receive in consummation of the purchase of his land, showing that such privilege had been granted to the defendant, who was to have the full enjoyment of it by himself, his heirs and assigns for ever. If such an agreement were made and founded upon the consideration alleged, it is a breach of every principle of good faith on the part of the plaintiff now to attempt to maintain this action in violation of his agreement.

The second error assigned is, that the court erred in charging the jury "that the presumption only commenced from the time the plaintiff took possession, to wit fifteen or sixteen years before the suit brought." The words of the charge here alluded to are: "it appears also that the plaintiff entered on his place two or three years after (meaning after defendant built his dam, in 1814), that is to say, fifteen or sixteen years before the suit, and to *that extent*, he may be considered to have acquiesced in the right of the defendant to the privilege he claims to overflowing the land of the plaintiff by the dam in question." Now if the court meant to convey to the jury the idea that the acquiescence of those of whom the plaintiff bought the land, before he purchased, in the defendant's building his dam and using the water of the stream as he did, was not to be regarded as having any effect upon the plaintiff; or, in other words, that the plaintiff's own personal acquiescence, after he acquired an interest in the land, could alone bind him, they were wrong: because if the owners of the plaintiff's land, at the time the defendant built his dam acquiesced in his doing so, and continued their acquiescence as long as they remained the owners of it, the plaintiff ought to be considered as buying the land subject to such acquiescence; and if it were to be continued for the space of twenty years, it would give to the defendant the same right to continue in the enjoyment of his dam as he had constructed it, that it would have done had the plaintiff been the owner of the land during the whole period. The occupation and enjoyment of such a privilege as that claimed by the defendant, acquiesced in for the space of twenty years, by the different succeeding owners of the land out of which the privilege is claimed, though there should be twenty of them in number, and no one of them had been owner of the land more than one year, will raise a presumption in favour of the right to enjoy it, just as strong and conclusive as if but one of them had been the owner of the land during the whole of the twenty years.

We do not think that the third error assigned is sustained: nor can we say that the fourth is. They rather relate to the opinion of the court in regard to the effect and the weight of the evidence as it tended to prove one state of things or the other; but still the court seem to have left the facts to be determined by the jury as they should weigh the evidence.

[M'Kellip v. M'Ilhenny.]

In regard to the fifth error assigned, it is conceived that, from what has been laid down as the law applicable to the facts offered to be proved by the defendant and the nature of the evidence by which he proposed to do so, that it is unnecessary to examine particularly that part of the charge of the court to which this error has a reference ; because it is apparent from the tenor of the charge that this part of it was given from a conviction on the part of the court that all the evidence which the defendant proposed to give, together with what he had given, was not sufficient in law to sustain his defence against the plaintiff's claim.   But viewing the evidence offered by the defendant and rejected by the court as admissible, and if believed by the jury as fully sufficient in law to establish a good defence for him, it is apprehended that the charge of the court to the jury upon a subsequent trial of the cause, will be such as the defendant will have no reason to complain of.

Judgment reversed, and a *venire de novo* awarded.