Cook *vs.* Pridgen, Stapler & Dunn.

JAMES C. COOK, plaintiff in error *vs.* PRIDGEN, STAPLER & DUNN, defendants in error.

(BY TWO JUDGES.)—1. A parol license to one to enjoy a permanent ease-ment upon the land of another, (as to back water upon it) is an interest in the land, and must be in writing, by the Statute of Frauds, and is void at law.

2. But if the licensee, in pursuance of the license, goes forward, and for the enjoyment of the easement makes large investments, and the ease-ment be one in its nature permanent, equity will decree a specific per-formance as in other cases of a part performance, by one party, of a parol contract for the sale of lands.

3. In this State, when a defendant in a suit at law might, by going into equity for specific performance, defeat the plaintiff's action at law, he may set up his equitable defense at law.    5th March, 1872.

Water-courses. License. Prescription. Equity. Prac-tice. Before Judge HARRELL. Muscogee Superior Court. June, 1871.

In 1869, Cook sued Pridgen, Stapler & Dunn, averring that in said year he owned certain described land and they erected a mill-dam below it, and thus overflowed and injured said land. Besides the general issue, defendants pleaded as follows: Cook's land belonged to Cook's father during 1838 and until his death in 1864, then for life to Cook's mother, till she died in 1864, then to Cook and his sisters, as remain-der men; that in 1838 Jones owned the land next below said Cook's, where the dam is, and owned it until 1864, when he died; that his administrator then sold it to defend-ants; that in May, 1868, Jones began building a dam across the Chattahoochee river and a mill, the dam to be five feet high; that while Jones' agent was building the dam, Cook frequently was present and inquired as to the probable extent of back-water which such dam would cause; that said agent explained to him the level, and said if the dam was five feet high the water would be raised a foot above its natural height at Cook's line, and that by making the dam six feet high the raise at Cook's line would be two feet, and told Cook

that it was very desirable to have the dam six feet high, and asked Cook to allow him to make it six feet high; that Cook said he did not believe that a raise of two feet at his line would overflow his lowlands or injure them, and told the agent he might make Jones' dam six feet high. Thereupon, with Jones' approval, the dam was so built and finished in 1869. At the same time Jones built a valuable mill and put in machinery, to be run by water raised by said dam. The dam cost Jones $5,000, and the mill and machinery cost $10,000, which expense was incurred by reason of said Cook's said permission. That Jones kept up the dam and mill while he lived; his administrator kept them up till in 1865, when the United States forces burnt down the mill, and then the administrator sold the dam (which was as it had been) and land to defendants, who rebuilt the mill at a cost of $10,000, relying on said license; and during all of said time, from 1838 until this suit was begun, said overflow had been continued without interruption as aforesaid.

The evidence on the trial as to the title of the parties to their respective land was as stated in the plea, plaintiff having acquired the whole title to his land by purchasing his sisters' interests, one in 1854 and the other in 1868. Plaintiff proved that part of this dam was washed away in 1841; that it was rebuilt, one end exactly where it had been and the balance a little lower down; that it was all washed away in 1855 and again rebuilt, where it was the last time substantially, but part of it a little lower down. Plaintiff gave evidence that the dam was broken when defendants bought. He also had evidence that the dam raised the water at Cook's line about five feet above its natural level, and that he notified the parties in 1855, and that when defendants repaired the dam that he would sue them for damages. He showed the *quantum* of damages. Defendants proved the facts averred in their plea, and gave evidence tending to deny plaintiff's complaints at building, repairing, etc., as aforesaid. In rebuttal, plaintiff showed, among other things, that for

many years during said overflowing his said sisters were minors and then *femes covert*

The evidence closed. The Court explained to the jury the nature of the action, and told them to find for the plaintiff the damages proved, if the defendants had overflowed his land, unless the defendants had made a good defense. As to the defenses, he charged as follows: "They set up several special pleas, which may be briefly designated by calling them pleas of 'License,' 'Prescription' and the 'Statute of Limitations,' which I will explain to you in their order. The defendants, under their plea of license, say that they are not guilty of trespassing on the plaintiff's land, because, they say, that, if the water is backed on plaintiff's land, by reason of their dam, it is not backed over two feet, and that they are purchasers for value of Seaborn J. Benning, as administrator of Seaborn Jones, of the lot of land on which their dam is situated, with all the rights, members and appurtenances thereunto belonging, and that one of these rights was a right to back water on plaintiff's land, to the height of two feet; that this right arises from an agreement of purchase, or, in other words, a license acted upon, between James Cook, the ancestor of the present plaintiff, and Seaborn Jones, now deceased, the intestate of the vendor, Seaborn J. Benning. You have heard the evidence upon this point; you will weigh it well, and apply to it the following rules of law: You will first determine whether the license the defendant sets up was a gratuitous license, or whether it was a license upon valuable consideration, if you shall consider such a license was ever granted. If it was a gratuitous license, it is no justification to the defendant, because a gratuitous license is of the nature of a personal privilege ; it is revoked by the death of the grantor, and also by the assignment or sale of the property to which the privilege or license was attached. But, if the license set up was granted, and was a license upon a valuable consideration, then the defendants are justified in backing water on the plaintiff's land to the extent of two

Cook *vs.* Pridgen, Stapler & Dunn.

feet, if you believe the license was for two feet. So that if you determine the defendant's dam backs water on the plaintiff's land, and that there was no license granted to Jones by Cook, or, if granted, it was a gratuitous license, or if it was a license for value, and you should find the water is backed over the height allowed by the license, in each of these cases you would find for the plaintiff such amount of damages as the proof may show he has sustained. But, in the last-mentioned case put, viz., if a license was granted for a valuable consideration, and the amount of back-water exceeds the amount allowed by the license, the damages you would allow would not be the whole amount of damages sustained by the plaintiff by reason of the back-water, but the amount of damages sustained by reason of the excess of back-water over that allowed by the license, if any such you should determine there is. In saying that you will find for the plaintiff in the cases put, I mean so far as the defense set up by the defendant in this plea of license is concerned. I will hereafter give you the rules of law in charge, as to the other defenses set up by the defendants. If, on the other hand, in considering the question of license, you should determine that a license was granted upon valuable consideration, and that the back-water does not exceed the amount allowed by the license, then you need go no further, but will return a verdict for the defendant. And to determine whether the license, if granted, was a gratuitous license, or a license for a valuable consideration, I give you this rule of law in charge : If, at the time of granting the license, or afterwards, Mr. Cook received any benefit, or Mr. Jones sustained any injury, then this benefit or injury would be a valuable consideration that would support the license. If the evidence shows that at first Jones intened to build a dam five feet high, and afterwards, by reason of and acting upon the faith of the license granted by Cook, he went to additional expense to make his dam six feet high, or in any way added to his mill, then this additional expense of injury to Jones

Cook *vs.* Pridgen, Stapler & Dunn.

would be a sufficient valuable consideration to support the license, and to render it irrevocable.

"The plaintiffs, in this case, insist that this would be allowing an interest in land to pass by parol. Ordinarily, I tell you that an interest in land can only be passed by writing; but, where A sells land to B by parol, and B pays the purchase-money, the law will not allow A, after receiving the purchase-money, to set up the Statute of Frauds. So, in this case, if Cook granted a license to Jones, and Jones gave valuable consideration for it, in the manner I have explained to you before, then the law will not give to Cook, or those claiming under him, the benefit of the Statute of Frauds. So that on this point the case reverts back to the original questions—was a license granted? Was it a gratuitous license? Or was it based on a valuable consideration, and, if on a valuable consideration, has it been exceeded?

"If you should determine in favor of the plaintiffs on the general issue, and on the special plea of license, you will next consider the plea the defendant sets up of prescription.

"In this plea defendants do not rely on any original license, but set up that the successive and continued possession of Jones, Benning and themselves, of the land of plaintiff, covered by the back-water, has been continued and adverse to the plaintiffs for a period of over twenty years. It is unnecessary to explain to you what is continued; but, as to adverse possession, I will say, that, if the defendants have occupied the land of plaintiff by their back-water in such a way as that the plaintiff could not have as full and perfect use of their land as they might otherwise have done, then this would be an adverse possession; and if it has continued for twenty years, it would make a perfect title, and the plaintiff would not be entitled to recover. The plaintiff, however, sets up that James Cook died in 1844, and that from then until 1864, the legal owners of the remainder in the land after carrying out Mrs. Cook's life estate, were,

except himself, minors and married woman, and that it was a joint right of action, and therefore that this period of twenty years should be carved out of the time claimed by the defendants. This would be true, if the married women and minors were the plaintiffs in this action; but, as they sold their interest to the plaintiff, who was of full age, he cannot set up their minority or coverture. This is a personal privilege, which they alone can take advantage of.

"The next defense set up by the defendants is the Statute of Limitation of seven years. If the defendants' grantor, intestate Jones, exercised the right of backing water on the plaintiff's land for seven years, continuously and adversely, previous to 1852, then, by this occupation, he acquired a perfect title, whether it was under written evidence of title or not, and if, since 1852, he has so occupied it for seven years, under written evidence of title, this gives him a good title. And you will find for the defendants, if you find that they and those they claim under have occupied the land of plaintiff by backing water for twenty years, continuously and adversely, or if they have so occupied it for seven years, previous to 1852, or for seven years since 1852, under written evidence of title."

The Court here closed its charge, and the plaintiff requested the Court, in writing, to charge as follows:

### REQUESTS TO CHARGE.

First request. "If you believe, from the evidence, that plaintiff's ancestor granted a license, by parol, to defendants to overflow the land of plaintiff, this permission is revoked by the death of the ancestor from whom the license is claimed."

This charge the Court refused to give, as asked, but gave, with this addition: "This is true, unless it was an agreement by Cook that Jones should have the right to use his land in this manner, and it was executed by Jones in so using it, and expending money in order to so occupy it."

Second request. "A parol license to overflow lands given

by James Cook, deceased, to Seaborn Jones, deceased, is not a justification of the trespass complained of by defendants. If the trespass has been committed, defendants, as the assignees of Jones, cannot justify under a license given by the ancestor of plaintiff to the defendants' grantor." This charge the Court refused to give, as asked, but gave, with this addition: "This is true, if it was only a gratuitous privilege given by Cook to Jones, but if, by occupation and valuable improvements, or the expenditure of money by Jones, under an agreement made with Cook, he acquired property in the land for the purpose of backing water, or the right to back water, then Jones had a title to it to that extent, and one that he could assign, and if legally assigned to defendants, they were not trespassers."

Third request. "If a notice is in proof from plaintiff to defendants not to repair the dam, as it would overflow his land, this would make the defendants liable, if, after such notice, they did repair the dam, and by so doing overflowed the lands of plaintiff." The Court refused to give said request, as asked, but gave it with this addition: "This is true, if it was a mere gratuitous privilege, or if the water was raised beyond the agreement. But if there was an acquired property in Jones, and legally assigned to defendants, it would not be true if defendants only raised the water to the height of the first agreement."

Fourth request. "The right to overflow land of another is an incorporeal hereditament; it is such an interest in land as cannot, by law, be created by parol." This request the Court refused to give, as asked, but gave with this addition: "This is true, except, by a provision of our law, it was an executed agreement and a valuable consideration paid by Jones."

Fifth request. "The defendant is estopped by his pleadings, from setting up a title by prescription. Such title must be made out by an adverse possession. If the possession is permissive, the title by prescription only commences to run

from the time that notice is given of an adverse possession;" which charge the Court refused to give, as asked, but gave with this addition: "This is true, if the possession was permissive only, but if paid for and held under a claim of right, against the grantor himself, it becomes adverse to that extent."

Sixth request. "The statute does not run against married women or minors; and where the title to land is joint, and some of the owners are minors, and others of full age, the statute does not run against any of them until the disabilities of all are removed." This the Court refused to give, as asked, but gave with this addition: "This is true; but if the title is passed from those under disabilities to one who is not, he cannot claim this provision of law. These are special provisions for certain classes, and a purchaser who himself is under none of these disabilities, gets the title to the property, not the personal privileges of his vendor."

The jury found for defendants. The plaintiff complains that each part of said charge adverse to his claim is wrong, and that the Court erred in qualifying each of said requests as he did.

Moses & Downing; Peabody & Brannon, for plaintiff in error. Parol license revocable: 24 Ga. R., 182; especially if it does not injure the grantee thereof to revoke it: 14 Ga. R., 1; 24th, 181. Such a license confers no estate in land, and gives no right to rebuild: 8 A. and E. R., 777; 5 B. and C. R., 227; 2 Am. L. C., 531; 1 Dev. and B., (N. C.) R. 492. No adverse possession by one holding by permission of plaintiff: 21 Ga. R., 457; 7th, 388.

H. L. Benning, for defendants. Parol license acted upon irrevocable: 28 Ga. R., 589; 3d, 82; 12th, 239; 5th, 315; Brown on Statute of Frauds, sec. 31; Rev. Code, secs. 1961, 2698, 3133. In such cases licensee estopped: Rev. Code, 3700, 2915; 12 Ga. R., 52. The license runs with the land: 3 Ga. R. 84; Rev. Code, sec. 2647; 3 Kent's Com., 545;

Cook *vs.* Pridgen, Stapler & Dunn.

This possession was adverse: 8 Ga. R., 1. Trespass barred by four years', and ejectment by seven years' possession, if Cook's death revoked the license: 8 Ga. R., 1. All were barred; tenant could have brought trespass and remaindermen case: 1 Arch. N. P., 406, 447; Sedg. M. of Dam., 149; 3 Black, 229. Statute runs against one voluntarily under disability: Rev. Code, secs. 2875, 2876. Adverse possession for twenty years title against all not under disability: Rev. Code, sec. 2640; 3 Kent's Com., 542–3.

McCay, Judge.

1. We think the authorities, taken all together, establish this proposition, that a *permanent* easement on the land of another is an interest in the land; and a parol license to enjoy such an easement is void under the Statute of Frauds: 4 East. R., 109; Hurlins *vs.* Shipman, 5 B. & C., 221. See also 8 B. & C., 298; 4 Ad. & Ell., 329.

There is, without question, some confusion in the authorities; but we think the true distinction, which will reconcile most of them, is between a permanent right, one in its nature such that the parties must have contemplated its continuance, and a mere permission to do something on land, which, from the nature of the thing, is temporary only: 2 Hilliard, Abr. Am. L. Real Prop., 52; Angel on Water Courses, 286. Without doubt there are cases inconsistent with this view. But it will, we think, be found that, generally, these cases may be explained consistently with the distinction we have alluded to by considering the forum, whether at law or in equity, in which they have occurred.

A *license* even in writing is revokable. That is, if it show that it was the intent of the parties to give a mere license, and not a grant. In other words, a mere license is, in its nature, revocable; since that is the intent of the parties. If it be intended to be irrevocable, it is ordinarily a grant and must be in writing, or it is void *at law* by the Statute of Frauds.

But it does not always follow that a license is revocable at the will of the party giving the license. Even a temporary license must be considered as intended to continue until the objects of the parties are attained, as where even in Courts of law it has been held that a *mere license* to overflow land with water, by a dam for a saw mill, cannot be revoked during the continuance of the dam; since it may fairly be presumed that the parties intended the license to last that long at least. But if the dam be destroyed, then, as the term of the license is out, it may be revoked, and this when the easement is a *mere license,* so that may be by parol. See Angel on Water Courses, section 293, and note, with authorities cited.

2. But, while at law an easement, in its nature permanent, must as it is an interest in land be in writing, signed by the party owning the land to be burdened, equity will compel the specific performance of a parol contract for such an interest in land on the same principles as it will other parol contracts for the sale of land: 4 S. and R. 241; 4 Watts 317; 2 Equity Cases Ab., 523; 2 Atkyns, 391; 3 Cain's Cases, 87. So that if one under a *grant* of an easement, though it be by parol, go into possession and make valuable improvments in pursuance of the grant, so that it would be a fraud upon the grantee to permit the Statute of Frauds to operate, equity will decree a title: Houston *vs.* Lafee, 46 N. H., 508. Here was a clear grant—the easement was in its *nature permanent,* a mill and dam of the character disclosed by the proof, must, in the nature of it, (not as a *saw-mill* or other structure necessarily temporary) be intended for a permanent investment, and in our judgment this permission was not a mere license but a grant for motives satisfactory to the grantor. · The proof is, that the defendants acted upon the grant, went into possession, expended large amounts of money, and continued in possession for years.

3. Under our law, the defendant may set up, at law, any perfect equity—any right that needs nothing but a decree in chancery; and we think this was just such a case. We do

not discuss the other questions made in the record, or pass upon them, as we think the case turns on the view of the law we have taken.

Judgment affirmed.