ALEX RUTHVEN, Appellant, v. FARMERS CO-OPERATIVE CREAMERY COMPANY, of Ruthven, Iowa, Appellee.

**Drainage:** LICENSE: CONSIDERATION: REVOCATION. An action to abate a tile drain and for damages suffered for a purely private nuisance cannot be maintained in the face of a license to construct and maintain the drain for a sufficient consideration; and where the license was executed, the consideration paid and the licensor benefited by its construction, the license may be shown by parol, and is not revocable at pleasure.

*Appeal from Palo Alto District Court.*—HON. A. D. BAILIE, Judge.

Thursday, December 17, 1908.

Suit in equity to enjoin an alleged nuisance, and to recover damages suffered by plaintiff on account thereof. The trial court dismissed the petition, and plaintiff appeals.—*Affirmed.*

*E. A. & W. H. Morling,* for appellant.

*Kelly & Kelly,* for appellee.

Deemer, J.—Defendant conducts the sewage from its creamery through a tile drain constructed by it through plaintiff's land, and discharges it at a point thereon where plaintiff contends it has no right to do, to his loss and damage. It is also contended that the discharge creates a nuisance, and he asks that the nuisance be abated. Defendant admits the construction of the tile drain, claims that it was put in by arrangement and agreement with plaintiff, denies that the discharge creates a nuisance, denies any damage to plaintiff, and further pleads that it is using the drain under permission and license from plaintiff. It pleads that it paid a consideration for this license, and that, while in parol, it can not be revoked by plaintiff. The trial court sustained defendant's contention, and plaintiff appeals.

Defendant's creamery is north of the town of Ruthven, and plaintiff's land lies to the north of the creamery building; the south line being about ten rods from defendant's building. Plaintiff's land is a tract of one hundred and sixty acres, and the Minneapolis & St. Louis Railway runs diagonally through the land from near the southeast to near the northwest corner. It passes not far west of the center of the land, and the right of way is twice crossed by the tile in question. On the north and east sides of the land are public highways. There are, as

we understand it, no buildings or other improvements save fences upon the land. The entire premises are used for agricultural purposes. At or near the southeast corner of plaintiff's land, and just north of the creamery, and east of the railway, is a slough of about one acre in extent. Prior to the year 1903 plaintiff had put in a three-inch tile drain running from this slough northerly and north-westerly east of the railway to near the south corner of the northwest forty acres, where it connected with a six-inch tile coming from the east, which discharged about twenty rods northwest of the junction with the three-inch tile and into an open ditch which extended northwesterly across the railway right of way and through a low level piece of land to the northwest corner of the quarter. This low level piece comprised about seven acres of land. Complaint having been made of the way in which defendant was disposing of its sewage, one of its officers went to plaintiff and secured his permission to take up the three-inch tile to which we have referred, running north and northwest through his, plaintiff's, premises, and to sub-stitute six-inch tile therefor, defendant to be at the expense of so doing and to have such of the three-inch tile as might be saved. Pursuant to this arrangement, defendant con-structed a six-inch tile from its creamery northward and west of the railway to the south line of plaintiff's farm, thence northeasterly across the right of way to the slough to which we have referred, and then pursuant to arrange-ment to keep the three-inch tile which plaintiff had there-tofore put in, substituted six-inch in place thereof down to where it joined the other six-inch tile, making a con-tinuous run of six-inch tile from the creamery to the place where the tile theretofore put in by plaintiff was dis-charged. The discharge is not far from the southeast cor-ner of the northwest forty acres, and it is into an open ditch theretofore dug by the plaintiff.

Not far from the open ditch and to the westward,

plaintiff had dug a well forty-five feet deep. The new tile was put in and connected up with the creamery during the winter and spring of the years 1903-04, and since that time the defendant had discharged the waste from its creamery therein. That this was contemplated by both parties to this litigation can hardly be questioned. But plaintiff contends that the discharge has become offensive, that it destroyed the well hitherto mentioned, and that it made the lowland through which the ditch runs wet and marshy and unfit for cultivation. He admits the arrangement for the putting in of the tile, but claims that defendant was to run the tile entirely through the lowlands to the northwest and out to the highway on the north, and that he in no manner consented to the nuisance of which he now complains. On the other hand, defendant insists that it put in the tile as agreed, expended something like $165 in doing so, that the tile drains the slough at the southeast corner of plaintiff's land and other low places therein, and that having expended money on the strength of the license procured by it, plaintiff can not revoke the same. That there is an increase of the flow of water upon plaintiff's land by reason of the construction of the tile drain by the defendant can hardly be denied. And it is also quite well established that this increase has had a tendency to make the level land at the northwest corner of plaintiff's farm unproductive, and to some extent interfered with its proper cultivation. Noisome odors also arise from the discharge of the sewage from the creamery; but these are not noticeable until one gets near the point of discharge or the ditch through the level ground. But there is no testimony that any one suffers therefrom. In other words, there are no dwellings near and no proof of such a nuisance as is described in section 5078 of the Code. The action is not brought by plaintiff on behalf of the public, but to recover damages and abate a nuisance because of special damage suffered

by him.  If defendant has no right to discharge its sewage upon plaintiff, even if it be nothing more than water or other innocuous substance, he, plaintiff, would be entitled to damages for such injuries as he has sustained and proved, and, if the discharge of the sewage constitutes a public nuisance, and this were an action to abate it as such, no agreement between the adjacent owners would be a defense to the action.  But, as the action is purely for a private nuisance, an agreement that it might be maintained upon a sufficient consideration will be a complete defense.  *Cook v. Pridgen,* 45 Ga. 331 (12 Am. Rep. 582); *Railroad Co. v. McLanahan,* 59 Pa. 23; *Toll Bridge Co. v. Betsworth,* 30 Conn. 390; *Sayles v. Bemis,* 57 Wis. 315 (15 N. W. 432).

Plaintiff contends, however, that the license was upon condition that the tile be constructed across his land and discharged into the highway.  There is a dispute in the testimony with reference to this matter, but we are constrained to hold that no such condition was exacted.  All that defendant was to do on plaintiff's land, as we think, was to take up the line of three-inch tile and put in place thereof six-inch tile.  This it did, and it was not required to carry the same entirely across the northwest quarter of plaintiff's land.  That defendant obtained a license to put in the tile, to discharge its sewage therein, and that it expended money on plaintiff's land on the strength thereof and conferred some benefit upon plaintiff in draining the slough at the southeast corner of the land is so well established by the evidence as to be beyond the realm of dispute.

But plaintiff contends that the license can not be proved by parol testimony, that the work done was of no benefit to him, and that at any rate the license was revocable at his, plaintiff's, pleasure.  None of these propositions can be sustained.  Conceding *arguendo* that the license claimed by defendant was such an interest in land

as that the statute of frauds applies, the testimony brings the case within the exception to that statute, for it shows that defendant immediately went into possession, and it also paid the purchase price.    The licensee not only expended money on its own land, but also upon the land of plaintiff and to some extent, at least, for plaintiff's benefit.    It is this which distinguishes the case from *Jones v. Stover,* 131 Iowa, 119, and other like cases.    There no expenditure was made for the benefit of the licensor or upon his land.    That a parol license based upon a consideration is valid, and not revocable at pleasure, see *Cook v. C., B. & Q. R. R.,* 40 Iowa, 451; *Harkness v. Burton,* 39 Iowa, 104; *Vannest v. Fleming,* 79 Iowa, 638; *Spencer v. Andrews,* 82 Iowa, 14; *Hensen v. Creamery Co.,* 106 Iowa, 167.    The license in this case was fully executed, and plaintiff is in no position to revoke it.    Where executed it becomes irrevocable, for the reason that to permit the licensor to revoke it at pleasure would constitute a fraud upon the licensee.    *Wichersham v. Orr,* 9 Iowa, 253; *Upton v. Brazier,* 17 Iowa, 153; *Beatty v. Gregory,* 17 Iowa, 109.    See, also, valuable note to *Stoner v. Zucker,* 7 A. & E. Ann. Cas. 704.    Whatever the rule in other States, we are committed to the doctrine above announced, and find no reason for departing from it now.

Lastly it is contended that the alleged license is not satisfactorily proved, in that the terms thereof were uncertain and not sufficiently specific.    To this we can not agree.    The contract was certain, and it is sufficiently established.    The trial court did not err in dismissing plaintiff's petition.—*Affirmed.*