D. L. PASCAL et al., Appellants, v. AGNES HYNES, Appellee.

WATERS AND WATERCOURSES: Agreed System of Drainage—
1  Statute of Limitation—Easement.  A drainage system between the lands of different owners, constructed in the natural course of drainage by one of the landowners with the consent and acquiescence of the other, and continued and maintained for more than ten years to the mutual advantage of both of said owners, becomes a finality, an irrevocable easement which nothing will obliterate except an actual abandonment, as distinguished from an intention to abandon.

WATERS AND WATERCOURSES: Easement in Drainage System—
2  Abandonment—Facts Not Constituting.  Evidence reviewed and held insufficient to show an abandonment of an easement in a drainage system.

WATERS AND WATERCOURSES: Easement in Drainage System—
3  When Revocable—Failure to Repair.  An easement in a drainage system granted on a valuable consideration is not revocable at pleasure, even for a failure to repair as per agreement.  The

remedy for the complainant is to repair and demand recompense from the one holding the easement.

**WATERS AND WATERCOURSES:** Drains—Increased Flowage on 4 Servient Estate. Drainage which brings no material increase in flowage to the servient estate furnishes no ground for complaint.

*Appeal from Clinton District Court.*—HON. A. P. BARKER, Judge.

SATURDAY, APRIL 10, 1915.

THE facts appear in the opinion. Both parties appeal. *Affirmed* on plaintiffs' appeal. *Reversed* on defendant's appeal.

*Ellis & McCoy* and *Pascal, Pascal & Pascal,* for appellants.

*Wolfe & Wolfe,* for appellee.

LADD, J.—Plaintiffs own the W½ NW¼ of Section 9 and the defendant, the E½ of said quarter and the E½ SW¼ of Section 4, immediately above it. Between the sections is a highway which has been graded so as to be about 3½ feet above the natural surface. Near the southwest corner of the 80 in Section 4 was a pond of about two acres. Across the road to the southeast was a smaller pond. A swale extended from near these ponds in a southwesterly direction into the land of plaintiffs and then southerly for a distance of about 80 rods, emptying into a larger pond of about 3 acres, mostly in the plaintiff's land, but somewhat over the line on that of defendant.

The evidence leaves no doubt that there was a natural watercourse extending from a point in plaintiff's land about 50 feet south of the highway south to the pond last mentioned, with a fall of nearly 25 feet, and we are satisfied such watercourse originally extended across the northwest corner of defendant's south 80 into the highway and drained

the surface water settling in the pond in her north 80. But this cannot be ascertained definitely from the record before us, though apparently believed by the engineer. For many years prior to the trial, the road had been graded and the water from the north pond carried through a culvert therein and along a ditch on the south side of the highway about 80 feet west, and from that point the water passed southwest into plaintiff's land down the swale. The small pond immediately south of the highway was drained into this ditch on the south side of the road. In 1895, Martin Hynes (defendant's father-in-law, through whom she acquired the land), with the consent of George Pascal (plaintiffs' father, from whom they derived title), excavated a ditch from the culvert along the road across his south 80 into plaintiffs' land, about 10 rods, and laid tile therein. The water from this tile caused a mud-hole, and in 1904, defendant's husband, then owner of the land (she subsequently took under him), in pursuance of an agreement with plaintiffs, through D. L. Pascal, extended the tile drain to the pond on the line about 80 rods south of the highway, and the following year, additional tile was laid so as to cast part of the water into the pond on defendant's side of the line. As said, the tiling last done was in pursuance of an agreement entered into by plaintiff D. L. Pascal and one Jensen, representing defendant's husband. Pascal testified that it was agreed "that if I would not stop up the tile and let it go until after they got the crop in, and would allow them, until after they got the crop of corn in, allow them to carry this water down the natural watercourse to this pond they would build a fence around it whenever I got ready to tile to the pond, and he would go ahead with it and see that one-half the expense was borne by Mr. Hynes. . . . that he should keep this ditch in repair and maintained. That is all the tile drain mentioned as having been laid." Donahue testified that "after we put the tiling in I know Hynes wanted Mr. Pascal to give him some record about the tile. He asked Mr. Pascal if he was satisfied, and Mr.

Pascal said yes he was perfectly satisfied. And he wanted him to give him some writing about it. Mr. Pascal said he would not because he said if there became any holes in the tiling he expected Mr. Hynes to fix them, and Mr. Hynes said that would be all right.'' The tiling drained out the ponds near the highway, but plaintiffs claim that defendant did not keep it·in repair, D. L. Pascal testifying that: ''The dirt was washed off in one place in particular and there were other places where there were holes where the dirt was gone and it made holes in the tile. When a heavy rain came the water would come out, boil up out of those places, and there was danger of the stock stepping in those places and getting hurt; horses were in there. Holes have been there at different times. In the fall of 1910 there were at least six of them. In 1908 there was a place over there at the road where the dam was built. In 1908 I fenced around this one place to keep the cattle from destroying the tile. We put the fence there some time about the first of May, 1908, and I moved it in the fall of 1909. I took the fence down and hauled dirt to cover the tile up. There were holes there in 1912. They had sent some men in my field to repair the ditch; they filled it up in places and dug down into the holes and banked it up.''

In 1909 and 1910, plaintiffs laid a tile drain, from the pond into which that previously mentioned emptied, southerly into a ditch in the southwest quarter of the section, and D. L. Pascal for them stopped the tile defendant had laid a few rods west of the line fence in their land in or near the lower pond. The obstruction was removed by an employe of defendant in 1912, but again replaced by Pascal. Thereafter, defendant began laying a drainage tile connecting with that at the lower pond in her land and extending north to the tile carrying the surface water from her north 80, when this action was begun, aided by a temporary writ of injunction restraining her from proceeding. A cross-petition was filed praying that plaintiff be restrained

from interfering with the tile drain laid by her husband and father-in-law in plaintiffs' land, and from preventing defendant's entering on their land for the purpose of repairing and maintaining the same. On hearing, the court dismissed both the petition and cross-petition, and both parties appeal.

I. The tile drain constructed by Martin Hynes in 1893 carried the water from the pond north of the road into the swale on plaintiffs' land. The drain was laid with the then

1. WATERS AND WATER-COURSES: agreed system of drainage: statute of limitation: easement.

owner's consent and the surface water carried through it from defendant's land, as well as part of plaintiffs', with the acquiescence of the latter, the then owner under whom they claim, until 1904, more than ten years, by reason of which defendant has acquired a prescription right to the use of the drain in plaintiffs' land. *Hatton v. Cale,* 152 Iowa 485; *Dorr v. Simmerson,* 127 Iowa 551; *Vannest v. Fleming,* 79 Iowa 638.

Plaintiffs contend, however, that defendant has abandoned this easement by beginning the construction of the tile drain from the lower pond north in her land with the pur-

2. WATERS AND WATER-COURSES: easement in drainage system: abandonment: facts not constituting.

pose of carrying the surface water above the road which had flowed through the tile into plaintiffs' land. They had closed the drain at or near the lower pond so as to prevent drainage in that direction, and undoubtedly defendant had begun tiling through her own land in order to avoid farther controversy. But she had not completed the work or connected with the pond at the highway and was interrupted by this suit from carrying out her undertaking. She may have entertained the design to yield the other drain if this proved successful in carrying off the water, but there is nothing in the record indicating more. Even this much had been forced upon her by the tactics of plaintiffs in stopping the tile and insisting that it continue closed.

To constitute an abandonment, two elements are essential, (1) the intention to abandon and (2) the act of abandoning. Unless an easement is actually relinquished, it cannot be said to have been abandoned, regardless of what the intention may have been. 1 Corpus Juris 6. Whatever may have been the design of defendant, what she had done in laying the tile in her land and temporarily acquiescing in plaintiffs' interference with the drain in their land rather than enforce her rights in court did not amount to the abandonment of her right to the easement.

II. In 1904, the drain was extended south through plaintiffs' land to the lower pond and additional tile was laid the next or second year extending into defendant's land, so that, as we understand, the water would empty into the pond at different places. This was done under agreement between defendant's husband, who then owned the land, and D. L. Pascal, the former undertaking to keep the drain in repair and contribute half the expense of draining the pond out when the latter elected so to do. From this recital, it is manifest that no waiver of the existing easement was involved in entering into this agreement. On the contrary, it recognized the right of defendant's husband to cast the surface water from his land into the swale in plaintiffs' land and undertook to dispose of it further. Nothing to the contrary appears in *Robinson v. Luther*, 140 Iowa 723. In *Raleigh v. Clark*, 71 S. W. (Ky.) 857, relied on by appellant, the parties had agreed that an existing ditch be extended and that Clark should keep that excavated in Raleigh's land to a creek cleaned. This he failed to do, and the trial court instructed that no damages could be recovered for injury caused by water flowing through the existing ditch if it had been in operation fifteen years, even though Clark failed to keep his agreement, and but for such failure the injury would not have occurred. This was held to be error for that Clark, having received the benefit of his agreement, must assume the burden, and that, having undertaken that the water be carried off

in a manner different than through the existing ditch, he thereby waived any right to have it carried off as before. Under the agreement of 1904 in the case at bar, the water was to be carried through the tile laid in 1893 as before, the only change being that it was carried through the tile then laid rather than on the bottom of the swale. There was no waiver of the easement to carry the surface water through the tile in plaintiffs' land.

III. It may be conceded that the tiling laid by defendant's husband in plaintiffs' land got out. of repair at different times and that defendant did not restore it in the manner exacted by the agreement. Nothing appears to have been said concerning the manner of enforcing this agreement, so that the right to forfeit or revoke the license to extend the drain is not to be inferred unless the license was naked and without consideration. See *Jones v. Stover,* 131 Iowa 119; *Ruthven v. Creamery Co.,* 140 Iowa 570.

3. WATERS AND WATER-COURSES: easement in drainage system: when revocable: failure to repair.

But the agreement was based on mutual considerations. The land of defendant was better drained of the water settling in the ponds. The plaintiffs' land was benefited by carrying the water to an existing pond, instead of pouring it about 10 rods south of the road, and by the incidental drainage of the swale on each side of the tile for a distance of 60 rods. At great expense to defendant's husband, the improvement was made and for the mutual benefit of the parties and, resting on these considerations, the license is not revocable. *Ruthven v. Farmers Co-operative Creamery Co.,* 140 Iowa 570. The remedy of plaintiffs is not through revocation but, upon defendant's refusal or omission on demand, to repair the tile drain and exact recompensation for the expense thereby incurred. See *Robinson v. Luther,* 140 Iowa 723.

IV. The testimony of Pascal that the tile drain being

constructed by defendant would increase the flow of water into the lower pond evidently was based on the supposition that the drain through plaintiffs' land would be closed. With that open, there would be no material increase and the court rightly dismissed plaintiffs'. petition praying that the construction of the tile drain by defendant be enjoined.

**4. WATERS AND WATER-COURSES: drains: increased flow-age on servient estate.**

The relief prayed by defendant, i. e., that plaintiffs be enjoined from interfering with tile drain constructed by defendant and his father in plaintiffs' land and with defendant's repair and maintenance thereof, should have been granted.

*Affirmed* on plaintiffs' appeal, *reversed* on defendant's appeal.

DEEMER, C. J., GAYNOR and SALINGER, JJ., concur.