R. O. GREEN et al., Appellees, v. W. CRAIN et al., Appellants.

**LICENSES:** Installation of Steam, Water, and Sewer Pipes—Sufficiency of Evidence to Show License. Evidence reviewed, and held sufficient to sustain finding that the installation of steam, water, and sewer systems of a permanent and expensive nature by the owner of the third story of a building, in connection with pipes of the owner of the lot and of the first two stories of the building, had been made by mutual agreement, and with the knowledge and consent of the owner of the lot and the first two stories.

**LICENSES:** Installation of Steam, Water, and Sewer Pipes—Executed Parol License. The installation of steam, water, and sewer systems at a heavy expense by the owner of a third story of a building, under a fully executed parol license from the owner of the lot and the first two stories of the building, constituted an ir-

revocable license, and the owner of the lot and first two stories could not move from the building any of his pipes, the removal of which would materially interfere with the efficiency of the systems belonging to the owner of the third story.

*Appeal from Tama District Court.*—B. F. CUMMINGS, Judge.

### APRIL 12, 1919.

SUIT in equity by the owner of the third story of a building, against the defendant as owner of the first and second stories of such building, and of the lot on which the building is located, to enjoin the defendant from removing certain steam, water, and sewer pipes with which the steam, water, and sewer systems of the plaintiff are connected, such connection being had in the basement of the building. There was a decree for the plaintiffs, and the defendants appeal.—*Affirmed.*

*J. H. Willett,* and *Randall & Harding,* for appellants.

*Thomas & Thomas,* and *C. A. Pratt,* for appellees.

EVANS, J.—Plaintiffs are the trustees of a Masonic lodge, known as Hesperia Lodge. The defendants are the trustees of an Odd Fellows lodge, known as Gem Lodge. In the year 1901, the two lodges co-operated in building a three-story brick building upon a lot owned by the defendant lodge in the town of Traer. The defendant lodge completed the walls to the top of the second floor. The plaintiff lodge built the third story, including the roof. The agreement under which the two lodges co-operated was informal, and wholly in parol. Most of the persons who purported to represent the respective lodges in the transaction are dead. In order to prove the agreement, therefore, the plaintiff lodge has relied largely upon the circumstances of the erection of the building at the time, and upon the mutual conduct of the parties ever since.

Since the erection of the building, its first floor has at all times been occupied by the post office. The second

floor has been used by the defendant lodge for its lodge rooms, and the third floor by the plaintiff lodge for a like purpose. The basement of the building consisted of an excavation about six feet deep, with an entrance into it from the back of the building, and has never been used except for service pipes. In the year 1907, the defendant laid a service pipe into this basement from the steam heating main. In 1910, a sewer system was installed in the city of Traer. Shortly thereafter, and in the same year, each lodge proceeded to equip its rooms with steam heat, water, and sewer. Committees purporting to represent the lodges respectively worked in co-operation. The same plumber installed the necessary plumbing for both lodges, doing the work of the defendant in October, and that of the plaintiff in November. The work for the plaintiff consisted of a sewer pipe, carried up through the building from the basement to the plaintiff's toilet room on the third floor, together with a water line to feed it. The plaintiff also installed steam heat in its rooms, connecting in the basement with the main of the defendant. In the improvements made by it, the plaintiff made proper provisions for connections with its pipe in the basement, to be made by the defendant. The defendant later availed itself of these connections. The improvements thus made by the plaintiff involved an expense of over $500. The stack and service pipes have been used in common by the two lodges since that date. In 1914, it became necessary to put in lead pipe for the water connections, and this was done by plaintiff and defendant in co-operation, each paying one half of the cost. In 1911, a sewer assessment was assessed against the lot upon which the building was located. The defendant lodge demanded that the plaintiff should pay one third of such sewer assessment. Such demand was acceded to by the plaintiff, and the amount demanded was paid. The valves for cutting off the steam heat for the entire building, and all the meters connected with the improvements, were situated in the basement. The plaintiff's officers had access

thereto at all times until the beginning of this suit.

The general contention of the plaintiff is that it had obtained from the defendant an irrevocable license to maintain appropriate connections with the steam, water, and sewer systems. This controversy between the parties began in 1916. At that time, the defendant proposed to improve its basement, and to fit it for renting purposes. It served a notice upon the plaintiff, purporting to revoke its license to maintain its connections in question. It also threatened to remove the pipes. The general contention on the part of the defendant is that the proof offered by the plaintiff is insufficient to show an irrevocable license; that there is no record upon the books of either lodge showing any of the transactions claimed; that the parties who purported to represent the defendant lodge were without authority; that the plaintiff was either a trespasser or a mere licensee, whose license was revocable at any time. It is also contended by the defendant that, in December, 1901, the parties reduced the agreement to writing, and that such writing merged all prior parol agreements, and that the plaintiff is in no position to claim any other rights than the rights proclaimed by such written agreement.

What renders a license irrevocable is well settled, under our cases. *Decorah Woolen Mill Co. v. Greer*, 49 Iowa 490; *Vannest v. Fleming*, 79 Iowa 638; *Ruthven v. Farmers Co-op. Cr. Co.*, 140 Iowa 570; *Robinson v. Luther*, 140 Iowa 723; *Pascal v. Hynes*, 170 Iowa 121. That the plaintiff, by building its third story above the building of the defendant, and by thereby building a roof over the entire building, acquired some kind of an irrevocable right, goes without saying. Appellant concedes that it acquired a right of support and of ingress and egress. The real question in dispute is as to what was the scope and extent of the irrevocable right so acquired. For nearly 15 years, the conduct of both parties spoke consistently. There does not appear to have been

any misunderstanding at any time between them. We see no aid for the defendant in the contract of December, 1901. This contract was entered into after the construction of the building, and covers particular subjects. It expressly recognizes the previous oral agreement under which the parties had acted, but does not purport to recite what such agreement was. . Its preamble is as follows:

"That whereas the first parties by purchase became the owners of the west fifteen (15) feet of Lot Four (4) and the east fifteen (15) feet of Lot Five (5) in Block Thirteen (13), in Traer, Iowa, and whereas the parties to this contract with an oral understanding and agreement between them builded and erected thereon a three-story brick building, the first parties building the first and second stories thereof and the second parties building the third story thereof; and whereas, by the aforesaid oral understanding and agreement on completion of said third-story brick building, the first parties become the absolute owners of the first and second stories thereof, and the second parties become the absolute owners of the third story thereof."

The contract proper dealt only with the question of the use and repair of the stairway. It also conferred upon the plaintiff the revocable right to erect upon the rear end of the premises a coalhouse and water-closet. All the transactions between the parties relating to heat, water, and sewers arose after the contract in question.

In October, 1915, these two lodges joined in a contract, as first party thereto, with one Taylor as second party. By this contract, Taylor, an adjoining property owner, acquired the right to connect with the heating system through the building of the first party. Such contract contains the following in its preamble:

"Whereas, the first parties have installed in their said building a steam heating system consisting of pipes, traps, meter, radiators and other fixtures necessary thereto, which

said heating system is connected in Second Street, in the said town with the heating mains of the Traer Electric Company, and the said Gem Lodge and Hesperia Lodge own the portions of the said heating plants in their respective portions of the said building owned by them, and *own in common the main pipes fitting and connecting with the same and especially the main pipe connecting the same with the said heating system* of the Traer Electric Company *and the tunnel and manhole* through which the said pipe is laid from the said heating main to the said building; and　＊　＊　＊ "

No useful purpose can be served by dwelling unduly upon the details of the evidence. Enough has been stated to show the general trend thereof. Upon the record, we see no room for fair doubt that the installation of its various systems was done by the plaintiff with the knowledge and consent of the defendant, and by mutual arrangement. The improvements were expensive. They were permanent in their nature. Though the license was in parol, it was fully executed, and was so done at a large expense to the plaintiff, with the full knowledge and consent of the defendant. The trial court properly held, therefore, that the plaintiff had acquired an irrevocable license to maintain its improvements. The decree entered permitted the defendant to rearrange and move the service pipes and fixtures in the lower part of the building to such new location as suited its convenience, provided that the change should not be such as to materially interfere with the efficiency of the plaintiff's system. The decree is right, and it is, accordingly,—*Affirmed.*

1. LICENSES: installation of steam, water, and sewer pipes: sufficiency of evidence to show license.

2. LICENSES: installation of steam, water, and sewer pipes: executed parol license.

LADD, C. J., PRESTON and SALINGER, JJ., concur.